## S00A0104. WALLACE v. THE STATE.
### (530 SE2d 721)

SEARS, Justice.

Appellant Jack Ray Wallace appeals his conviction for murder,[1] alleging, among other things, that the trial court erred in permitting witnesses to comment on his exercise of the Fifth Amendment right to remain silent. We find, however, that because this contention was not raised before the trial court, it is waived on appeal. We also find that appellant's trial counsel did not render deficient representation so as to deprive appellant of his right to the effective assistance of counsel. Finding no merit in appellant's other contentions, we affirm.

The evidence of record enabled a rational trier of fact to find that on the evening of December 13, 1990, a small plane landed near the Ware Correctional Institute without activating its landing lights. The Ware Correctional Institute is situated adjacent to the Okefenokee Swamp in South Georgia. When correctional officers approached the plane, appellant's co-defendants Glean and Speas exited the plane. After obtaining a warrant, the officers searched a large black box that was found in the plane. The body of appellant's wife, Kimberly Wallace, was found inside the black box. She was naked, and a plastic bag had been secured over her head with a rope. The inside of the box was coated with petroleum jelly, and the plane's passenger door had been removed, presumably to facilitate sliding the body out of the box over the swamp. A medical examiner later concluded that the victim had been strangled to death.

The following evening, appellant voluntarily went to a Cobb County police station near his home and was interviewed about the crime. At that time, he executed a waiver form and consented to a search of his home and office. Appellant denied any knowledge of the victim's death, but did state, "I did not want it to be like that," when told how the victim was found.

---

[1] The crime was committed approximately on December 13, 1990, and appellant was indicted on January 18, 1991, for murder. Appellant was tried along with two co-defendants on September 9-19, 1992, was found guilty as charged, and was sentenced to life imprisonment. On May 26, 1995, appellant was granted a writ of habeas corpus allowing him to file an out-of-time appeal. Appellant then filed a motion for new trial. At the time of the evidentiary hearing on the new trial motion, appellant's trial counsel had died, and new counsel represented appellant. The new trial motion was denied on July 23, 1999. Appellant's notice of appeal was timely filed on August 17, 1999, the appeal was docketed on September 30, 1999, and orally argued on January 18, 2000.

A forensic chemist tested a jar of petroleum jelly containing black particles which was recovered from appellant's home. The chemist concluded that particles taken from the jar and from appellant's carpet were of the same morphology, size, shape and general texture as particles taken from the black box in which the victim's body was found; however, he could not state at trial that the two sets of particles came from the same source. A chemist also determined that tape, rope, and plastic bags found in appellant's home were similar to those used in the murder; however, the chemist could not determine that it was the same rope or tape as was used in the murder. Investigators located appellant's Jeep at co-defendant Glean's house. A letter with directions to a nearby airport was found in the Jeep's glove compartment. Aerial charts and maps of the Okefenokee Swamp were also recovered from Glean's house.

Prior to the murder, the victim had separated from and had filed for divorce from appellant, and co-defendant Glean was appellant's attorney in the divorce action.[2] On the evening she disappeared, the victim was scheduled to stop by appellant's home to retrieve holiday ornaments. She was not seen again after that scheduled appointment. The victim's cousin testified that she had previously witnessed violent encounters between appellant and the victim, and that appellant had threatened to kill the victim. The victim's father testified that appellant had told him he would never again allow his possessions to be taken from him in a divorce action (prior to his marriage to the victim, appellant had been divorced two times).

1. Construed most favorably to the verdict, the evidence was sufficient to enable a rational trier of fact to find appellant guilty of the murder of his wife.[3]

2. Appellant urges that the trial court erred in permitting the State to comment at trial upon appellant's exercise of his Fifth Amendment right to remain silent when questioned by law enforcement officers about the crime. In support of this claim, appellant refers to several instances during the trial when witnesses answered attorney questioning by stating that appellant did not say anything in response to certain inquiries made by police, but rather simply swallowed hard, wrung his hands, breathed and sighed deeply, and shuffled his arms and legs. In its closing argument, the State alluded to this testimony by referring to appellant's "gulps . . . blank stare . . . and cold expression," and by arguing that while appellant "didn't come out and admit anything" to police, appellant's physicality, when considered in light of his motive and opportunity, indicated his guilt.

---

[2] This Court has previously affirmed Glean's conviction for murder. *Glean v. State*, 268 Ga. 260 (486 SE2d 172) (1997).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"[A] comment upon a defendant's silence or failure to come forward is far more prejudicial than probative, [and therefore] . . . will not be allowed even where the defendant had not received *Miranda* warnings."[4] Based upon this same reasoning, a witness in a criminal trial is not permitted to testify as to a declarant's incriminating statements, made in the presence of an accused, to which an accused tacitly acquiesces by remaining silent.[5]

The State urges that the testimony complained of by appellant was permissible because it did not include a witness's personal comment or opinion regarding appellant's exercise of the right to remain silent. Our review of the trial transcript tends to bear this out, as the testimony cited by appellant either (a) merely stated that appellant did not respond vocally to certain questions posed to him by police, and (b) described appellant's physical conduct during his interrogation by the police. However, the State's argument is unavailing, since this Court's precedent prohibits not just testimony that comments upon a witness's silence, but any testimony touching upon the silence of an accused, because the prejudicial impact of such testimony is far greater than "its minimal probative value and [thus] will not be allowed."[6]

Nonetheless, despite that it appears the trial court erred in admitting this testimony, we need not evaluate whether the testimony had a harmful impact upon appellant's trial, because the ground of appellant's objection on appeal – that the testimony complained of wrongly commented on his Fifth Amendment right to remain silent — was not raised at trial and hence must be deemed waived on appeal.[7]

3. Appellant claims that the trial court erred in denying his new trial motion because trial counsel was ineffective due to (1) counsel's failure to object on Fifth Amendment grounds to the eliciting of witness statements regarding appellant's exercise of the right to remain silent; (2) counsel's failure to obtain an independent scientific evaluation of physical evidence; and (3) counsel's inadequate preparation for trial and visits to a hotel bar during the course of the trial.

The burden of establishing the ineffective assistance of trial

---

[4] *Mallory v. State*, 261 Ga. 625, 630 (409 SE2d 839) (1991). See Agnor's Georgia Evidence, § 11-9 (3d ed. 1993); McCormick on Evidence, § 160 (4th ed. 1992).

[5] *Jarrett v. State*, 265 Ga. 28 (453 SE2d 461) (1995).

[6] *Jarrett*, 265 Ga. at 29 (citing *Mallory*, 261 Ga. at 630).

[7] *Brinson v. State*, 268 Ga. 227 (486 SE2d 830) (1997); *Mundy v. State*, 259 Ga. 634 (385 SE2d 666) (1989). Appellant's counsel objected at trial that in describing appellant's physicality during questioning, the detective was essentially trying to render an opinion as to appellant's truthfulness, and that therefore the testimony was unfair, akin to garbage, impermissible, and prejudicial. Counsel did not, however, articulate a Fifth Amendment objection.

counsel is a heavy one that requires an appellant to establish both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[8] Regarding this second prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings," he must establish a reasonable probability that but for the error, his trial would have ended differently.[9] A failure to make a sufficient showing on either of these prongs will be fatal to a claim of ineffective assistance.[10]

(a) Concerning appellant's claim that his trial counsel was ineffective for failing to object on Fifth Amendment grounds to testimony that touched upon appellant's right to remain silent, we need not determine whether counsel performed deficiently, because we conclude that in all likelihood, the failure to object did not contribute to the proceeding's outcome. Evidence presented at trial established that the victim: (1) was at appellant's home at roughly the time she disappeared; (2) had previously been subjected to appellant's verbal and physical abuse; and (3) was engaged in an acrimonious divorce from appellant. Physical evidence linked material from appellant's home to the black box in which the victim's body was found. When told of the circumstances of his wife's death, appellant stated, "I did not want it to be like that." In light of this evidence, we conclude that no prejudice resulted from trial counsel's failure to raise a Fifth Amendment objection.

(b) Appellant's trial counsel filed a pretrial motion seeking to allow an expert of appellant's choosing to examine the physical evidence. Although that motion was granted, trial counsel did not obtain an independent evaluation of the evidence, and appellant claims that constituted ineffective assistance that prejudiced him at trial.

We disagree.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, and to reconstruct the circumstances of counsel's challenged conduct, and to evaluate [that] conduct from counsel's perspective at the time [of trial]. . . . Even the best criminal defense attorneys would not defend a particular client in the same way.[11]

---

[8] *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984).
[9] Id., 466 U. S. at 693-694.
[10] Id., 466 U. S. at 697.
[11] *Strickland*, 466 U. S. at 689.

Our review of the trial transcript shows that counsel conducted an effective cross-examination of the State's experts regarding the physical evidence linking appellant to his wife's murder, in which those experts conceded that although they believed the fibers and particles found in the box in which the victim's body was discovered were similar to fibers and particles taken from appellant's home, they could not state that the fibers and particles came from the same source or origin. Similarly, the State's experts conceded on cross-examination that duct tape, clothesline, and a garbage bag found with the body were only similar to duct tape, clothesline, and garbage bags recovered from appellant's home, and were not identical. Appellant has not shown what additional meritorious showings, if any, trial counsel would have been able to make to the jury had he retained an independent expert, and we conclude that the decision not to do so fell within counsel's reasonable exercise of discretion and trial strategy.

(c) The record does not support appellant's claim that counsel failed to prepare adequately for trial, as it shows that counsel met and spoke with appellant on several occasions prior to trial, and frequently conferred with him during trial. Appellant's claim that counsel accrued a tab from five visits to a hotel bar during the course of the trial does not establish that counsel's courtroom performance was deficient.

4. The trial court did not err in admitting into evidence statements made by appellant to police after the victim's body was discovered. Contrary to appellant's contention, when the totality of the circumstances surrounding the making of the statements are considered, the trial court correctly concluded (after holding a *Jackson-Denno* hearing) that the preponderance of the evidence militated in favor of the statements' admission.[12]

At the time the statements were made, appellant was healthy, mature and educated. He had voluntarily gone to police headquarters to discuss his wife's murder. He had been advised of his *Miranda* rights, and had executed a waiver of rights form. He was not denied food or drink, and although the interview did elapse over a nine-hour period, there were several breaks within that time period, including a two-hour break. The interview ceased upon appellant's request. Under the totality of these circumstances, the trial court did not err in concluding that appellant's statements were voluntarily and knowingly made, and thus were admissible.

5. Appellant's motion to recuse the trial judge from hearing his motion for new trial was properly denied by the Chief Judge of the

---

[12] See *Gober v. State*, 264 Ga. 226, 228 (443 SE2d 616) (1994).

Waycross Circuit. Contrary to appellant's assertions, the trial judge's denial of appellant's other post-trial motions does not indicate that the judge "harbor[ed] bias, stemming from an extrajudicial source, which is of a nature and intensity as would interfere with the exercise of impartial judgment."[13] Nor does the evidence of record support appellant's contention that the trial judge harbored an extrajudicial bias in favor of trial counsel that prevented him from impartially evaluating the claim of ineffective assistance raised in appellant's new trial motion.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 30, 2000 —
RECONSIDERATION DENIED JUNE 29, 2000.

*Vinson, Talley, Richardson & Cable, J. Glenn Richardson,* for appellant.

*Richard E. Currie, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Monroe, Assistant Attorney General,* for appellee.

---

[13] *Berry v. State,* 267 Ga. 605, 607 (481 SE2d 203) (1997).