301 Ga. 161
FINAL COPY

S17A0255.  VEAL v. THE STATE.

PETERSON, Justice.

Anthony Torrence Veal challenges his convictions for numerous crimes, including malice murder, committed in the course of an armed robbery.[1] Veal argues that the trial court erred in failing to strike for cause potential and actual jurors who knew the murder victim or had a business relationship with the bank where the crimes occurred and that his counsel was ineffective for failing to move to strike the jurors for cause.  Veal also argues that his due process rights were violated by the trial court's failure to rule on his motion for new trial for over 17 years, and that his trial counsel was ineffective for failing to pursue

---

[1] The crimes occurred on April 15, 1997.  On June 16, 1997, a Putnam County grand jury indicted Veal for malice murder, armed robbery, possession of a sawed-off shotgun, and possession of a firearm during the commission of a felony.  Veal was tried from August 19 to August 29, 1998, found guilty on all charges, and sentenced to life in prison for the malice murder conviction, a consecutive term of life imprisonment for the armed robbery conviction, and consecutive five-year terms of imprisonment for the two firearms offenses. On September 1, 1998, Veal filed a timely motion for new trial, which he amended with new counsel on April 4, 2016.  Following a hearing, the trial court denied the motion, and Veal filed a timely notice of appeal. The case was docketed to this Court for the term beginning in December 2016 and submitted for a decision on the briefs.

post-conviction relief in a timely fashion. Veal did not preserve his argument that the challenged jurors were disqualified from serving as a matter of law, and trial counsel was not ineffective because a motion to strike on the only basis Veal asserts would have been meritless. Because Veal has failed to demonstrate that he was prejudiced by any post-conviction delay, his due process and ineffective assistance of counsel claims related to the delay also fail. We affirm.

Viewed in the light most favorable to the verdicts, the evidence shows that, at about 9:00 a.m. on April 15, 1997, a black male carrying a sawed-off double-barrel shotgun entered the Lake Sinclair branch of The Peoples Bank in Putnam County, Georgia. The man was wearing camouflage pants, a black shirt with light print, dark gloves, sunglasses, and a bandana over his face. Without saying a word, the man shot branch manager Larry Ellington in the stomach, causing injuries that led to Ellington's death. After shooting Ellington, the man approached a bank teller, pointed the gun at her, and demanded that she give him money. The teller gave the man $13,525 in various denominations of cash; the man then fled into the woods behind the bank.

Police officers learned that, around the time of the robbery, a white, low-rider Mitsubishi truck had been parked on the Jackson Road causeway,

2

located directly behind the bank and the wooded area. Witnesses testified that they also saw a black male walking near the truck, holding a white bucket, and wearing a black cap and bandana. A retired state patrol trooper specifically identified Veal as the black male he saw on the Jackson Road causeway.

A few hours after the robbery, police officers stopped a white Mitsubishi truck as it was leaving the nearby Hy-Lite manufacturing plant. Veal was driving the truck and gave the officers permission to search it. Police found a brown bag containing over $13,000, bundled in wrappers bearing the name of The Peoples Bank. The bank teller confirmed that the recovered money was the same money that she gave the armed robber.

Police also searched the woods behind the bank and found a dark colored t-shirt with white lettering, a pair of sunglasses, and a fishing rod and reel that was later identified by one of Veal's friends as the rod and reel he lent to Veal. A dive team also searched the lake located directly off the Jackson Road causeway and found a sawed-off double barrel shotgun that had three pieces of red tape around the barrel. One of Veal's former co-workers identified the shotgun as the same one he saw in Veal's possession less than a week before the robbery.

3

Police later learned that Veal was scheduled to start his shift at the Hy-Lite plant at 7:00 a.m. on the day of the armed robbery, but he did not arrive until 9:30 a.m. Veal left work at about 10:00 a.m. and returned twenty minutes later. A witness testified that at about 10:00 a.m., he saw a black male driving a white truck pull into a restaurant parking lot located less than a mile from the Hy-Lite plant and throw something into the dumpster. The witness testified that the white truck was the only vehicle that appeared in the parking lot after the garbage had been collected earlier that morning. Police searched the dumpster and found a black baseball cap that was a type usually worn by Veal, a white bucket, camouflage pants and bandana, and oil cans that had Veal's fingerprints.

1. Veal does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, we have independently reviewed the record and conclude that the evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Veal was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Veal argues that the trial court erred in failing to strike for cause five people who served on the jury and five other individuals who were on the panel

of prospective jurors, because they stated during voir dire that they either banked at The Peoples Bank or had previously worked with Ellington, the murder victim, at the bank. Veal concedes that he did not make a request to strike the jurors. Therefore, the issue was waived for direct review. See Lewis v. State, 291 Ga. 273, 275 (1) (731 SE2d 51) (2012) (where a party remains silent after hearing evidence that might disqualify a prospective juror, the party has impliedly waived his right to raise the disqualification issue on appeal); Passmore v. State, 274 Ga. 200, 202 (5) (552 SE2d 816) (2001) (defendant did not preserve juror disqualification issue because he failed to challenge juror for cause at trial); see also Thompson v. State, 294 Ga. 693, 700-701 (755 SE2d 713) (2014) (Nahmias, J., concurring specially) (noting absence of legal authority requiring a trial court to excuse jurors for cause without any request from a party).

Nevertheless, because Veal also raises the issue in his claim that trial counsel was ineffective, we consider the alleged errors within the analytical framework of an ineffectiveness claim. To prevail on his ineffectiveness claim, Veal must show that trial counsel's performance was deficient and that the

deficient performance caused him prejudice. Strickland v. Washington, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

(a) *The jurors and panel members who banked at The Peoples Bank*

Five jurors and three panel members stated that they had banked at The Peoples Bank, including at the Lake Sinclair branch where the crimes occurred. Some of these jurors had interactions with Ellington, the murder victim, or with his daughter.

Veal argues that these jurors were per se disqualified as a matter of law under the reasoning of Kirkland v. State, 274 Ga. 778 (560 SE2d 6) (2002) and Lowman v. State, 197 Ga. App. 556 (398 SE2d 832) (1990). In Kirkland, we held that a shareholder of a corporation was disqualified from serving as a juror in a case where the corporation was a party at interest as the victim of the charged offense. 274 Ga. at 779 (1). In Lowman, members of an electric membership corporation were disqualified from serving as jurors in a criminal trial in which the corporation was the victim of the crime charged, because the members had the ability to receive revenues and assets of the corporation. 197 Ga. App. at 557 (2).

Kirkland and Lowman are inapposite to the circumstances here. Unlike the individuals in those cases who had ownership interests in the victim corporations, there is no evidence that the jurors who banked at The Peoples Bank had similar rights or interests. Rather, the uncontradicted testimony of the president of The Peoples Bank, given at the motion for new trial hearing, established that the bank is privately held and its customers have no shareholder status. The bank president also testified that the bank's customers would not lose money if the bank was robbed because the accounts were insured and customer interest rates would also not be affected by a robbery. Veal also argues that the challenged jurors were disqualified due to the nature of their banking relationship with The Peoples Bank, a community bank that the bank president testified actively cultivates life-long relationships with its customers. But we have long ruled that a juror's knowledge of, or non-familial relationship with, a party is not a per se disqualification. See Cohen v. Baxter, 267 Ga. 422, 423 (1) (479 SE2d 746) (1997). Instead, "[a] juror's knowledge of, or non-familial relationship with, a witness, attorney, or party provides a basis for disqualification only if it is shown that it has resulted in the juror having a fixed opinion of the accused's guilt or innocence or a bias for or against the accused."

7

Green v. State, 295 Ga. 108, 111 (2) (757 SE2d 856) (2014) (citation omitted). Veal has failed to make such a showing.

The challenged individuals each stated under oath that they would be fair and impartial, and some confirmed that their banking relationship would not influence them if they were selected to serve on the jury. None of the challenged jurors or panel members expressed a fixed opinion as to Veal's guilt or innocence or showed a bias. The challenged jurors and panel members all confirmed that they could be fair and impartial, and no other evidence was introduced to refute their statements or otherwise cast doubt as to their fitness to serve on the jury. Contrary to Veal's arguments, these members' banking relationship with The Peoples Bank, by itself, did not disqualify them as a matter of law from serving on a jury. See United States v. Turner, 389 F3d 111, 116 (II) (A) (4th Cir. 2004) (rejecting per se rule of disqualification for bank depositors and distinguishing them from shareholders, who were subject to such a per se rule); see also Ellis v. State, 292 Ga. 276, 285 (4) (c) (736 SE2d 412) (2013) (explaining our reluctance to "extend the automatic disqualification rules for jurors beyond the statutorily prohibited relationships and, in criminal cases, full-time law enforcement officers and employees of the prosecutor's office"

(citation and punctuation omitted)). Veal offers no other reason the jurors were subject to disqualification. Therefore, trial counsel was not deficient for failing to make an unfounded motion to strike them for cause. See Phillips v. State, 277 Ga. 161, 162 (a) (587 SE2d 45) (2003). Veal has failed to show that any of the challenged jurors and panel members had a fixed opinion as to his guilt or innocence or was biased.

(b) *Panel members who previously worked with the murder victim*

Veal also claims that trial counsel was deficient for failing to challenge two other prospective jurors who had worked with Ellington at The Peoples Bank. We disagree that trial counsel was deficient for failing to strike B. C. and M. F. for cause due to their relationships with the bank or with Ellington.

The law presumes that potential jurors are impartial, and the complaining party has a burden to overcome this presumption. See Brockman v. State, 292 Ga. 707, 723 (9) (b) (739 SE2d 332) (2013). As discussed above, Veal was required to show that the prospective jurors' relationships with the bank or Ellington caused the jurors to have a fixed opinion of Veal's guilt or innocence or a bias for or against him. See Green, 295 Ga. at 111 (2). Veal has not made this showing.

9

We reject Veal's claims that M. F. and B. C. were per se disqualified due to their relationships with The Peoples Bank or with Ellington. As mentioned above, we have rejected a bright-line rule excluding from jury duty those who have a close, but non-familial, relationship with a party. As an extension of this principle, we have rejected the creation of a per se rule requiring the exclusion of jurors who have an employment relationship with a party to the lawsuit, and have expressly disapproved statements that could be read as advocating such a per se rule. See Kim v. Walls, 275 Ga. 177, 179 (563 SE2d 847) (2002) (citing Cohen). Both M. F. and B. C. said they could remain impartial and fair and presumed Veal's innocence, and Veal offered no reason to discredit those responses. As a result, these prospective jurors' relationships with Ellington or the bank afforded no basis to excuse them for cause. See Brockman, 292 Ga. at 722-723 (9) (b) (no error in failing to strike for cause a prospective juror who stated that he believed his co-worker relationship with the murder victim's brother would not "consciously" influence him and that he would be fair and impartial in consideration of the evidence); Mosely v. State, 269 Ga. 17, 19-20 (2) (495 SE2d 9) (1998) (trial court did not abuse its discretion in failing to remove for cause two jurors who knew the victim and attended the same church

10

as the victim); see also United States v. Dixon, 201 Fed. Appx. 674, 675-676 (II) (11th Cir. 2006) (in a case charging defendant with robbery of two Publix grocery stores, no error in denying motion to strike juror who had been a victim of a robbery and who was employed as a file clerk in Publix's corporate offices); Turner, 389 F3d at 117 (II) (A) n. * (4th Cir. 2004) (noting that other circuits have rejected the reasoning of United States v. Allsup, 566 F2d 68, 71-72 (9th Cir. 1977), which held that prospective jurors who worked at different branches of the victim bank should have been excused for cause).

Veal's reliance on Kirkland does not alter our rejection of a per se rule for exclusion of jurors with an employment relationship with a party. Stockholders are disqualified because they "stand to gain or lose by the fortunes of the corporation, because theirs is an equity interest." Turner, 389 F3d at 116 (II) (A). But mere employees, like B. C. and M. F., had no such interest. They were not subject to per se disqualification, and Veal offers no other basis why they should be disqualified. Therefore, Veal's challenges for cause are without merit, and trial counsel was not deficient for failing to make meritless motions to strike these prospective jurors for cause.

3. Veal argues that his due process rights were violated by the trial court's delay in ruling on his motion for new trial, filed in September 1998 and denied in June 2016. Although the delay was significant, Veal's due process claim fails because, as explained below, he has failed to demonstrate any actual prejudice caused by the delay.

The record shows that Veal filed his new trial motion in September 1998, and the trial transcript was filed with the clerk's office in February 1999. In November 1999 and June 2000, upon learning that Veal had requested a copy of his trial transcript from the clerk's office, Francis Ford, one of Veal's trial attorneys, sent letters to Veal explaining that, although the transcript and case file belonged to Veal, Ford needed the transcript in order to pursue the motion for new trial. Ford asked Veal for direction on how to proceed. Ford testified that he did not hear from Veal. In January 2001, Veal filed a pro se motion for copies of certain documents related to his case, but did not communicate the request to Ford. Nothing in the record shows what occurred over the next seven years.

In September 2008, Veal filed a complaint against Ford with the State Bar of Georgia for his failure to send the case file to Veal,[2] prompting Ford to send the file to Veal and remind Veal that his new trial motion was still pending. In October 2008, Veal filed a letter in the trial court seeking criminal warrants against government officials for his unlawful arrest, prosecution, and conviction. There were no filings or apparent action taken in the next year until Veal filed a pro se motion to vacate his conviction in December 2009, which the trial court denied.[3] In October 2014 and September 2015, Veal made several requests for documents related to his case, including materials filed in support of his motion for new trial, and asked whether Ford had withdrawn from the case. In November 2015, when he learned that Ford had not withdrawn as counsel, Veal sent a letter to the clerk, requesting that another attorney be appointed and reminding the court about the significant delay in resolving his motion for new trial. A new judge assigned to the case appointed new counsel in January 2016, and new counsel asked for a continuance to amend the motion for new trial.

_____

[2] The State Bar investigated Veal's complaint and found no evidence to suggest that trial counsel violated a rule of professional conduct.

[3] Veal's filing had no legal effect because "[a] criminal defendant in Georgia does not have the right to represent himself and also be represented by an attorney." Tolbert v. Toole, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014).

13

Although appointed new counsel, Veal continued to submit pro se pleadings and sought to be excused from the June 2016 hearing on his motion for new trial — a request the judge denied — because he did not want his new counsel to represent him. Following the hearing, the successor judge denied Veal's motion for new trial, concluding that the majority of the delay was attributable to Veal's own actions and lack of communication with trial counsel.

Substantial delays in the appellate process implicate due process rights, and we review appellate due process claims under the four-factor analysis used for speedy trial claims set forth in Barker v. Wingo, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972). See Glover v. State, 291 Ga. 152, 154 (3) (728 SE2d 221) (2012). "The Barker factors include the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. (citation and punctuation omitted).

Even assuming that the first three Barker factors — length of the delay, the reason for the delay, and the defendant's assertion of his right — weigh in favor of Veal, his due process claim nevertheless fails because Veal failed to show that he was prejudiced by the delay. See Loadholt v. State, 286 Ga. 402, 406 (4) (687 SE2d 824) (2010). "[I]n determining whether an appellate delay

14

violates due process, prejudice, unlike in the speedy trial context, is not presumed but must be shown." Glover, 291 Ga. at 155 (3). And we have repeatedly found that the failure to make this showing in an appellate delay claim to be fatal to the claim, even when the other three factors weigh in the appellant's favor (as we presume without deciding here). See, e.g., Leslie v. State, 292 Ga. 368, 373 (7) (738 SE2d 42) (2013); Whitaker v. State, 291 Ga. 139, 143-144 (3) (728 SE2d 209) (2012); Loadholt, 286 Ga. at 406 (4).

> The prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing. Appellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different.

Id.

Veal argues that, due to the delay, he is unable to pursue an ineffective assistance claim against his other trial counsel, Roosevelt Warren, because Warren is now deceased. But Veal does not point to any instances in which Warren, acting separately from Ford, was ineffective in his defense of Veal. Veal also points to the death of the judge who presided over his trial, noting that

the successor judge had less discretion to grant his motion for new trial. See

State v. Harris, 292 Ga. 92, 95 (734 SE2d 357) (2012). But "after a thorough

review of the case, even a successor judge may exercise a significant discretion

to grant a new trial on the general grounds." White v. State, 293 Ga. 523, 525

(2) n.4 (753 SE2d 115) (2013) (citing Harris). Veal's implicit argument that the

first judge may have disagreed with the successor judge's denial of Veal's

motion for new trial on the general grounds is wholly speculative.

Veal also claims that the post-conviction delay prejudiced him because

several of the State's witnesses, including the fingerprint examiner and the sole

identification witness (the retired state trooper), have died since his trial. But

Veal does not explain on appeal or in his motion for new trial how the

availability of those witnesses would have been relevant to his motion for new

trial or appeal. And in any event, "generalized speculation about the delay's

effect on witness memories and evidence is not the kind of 'specific evidence'

required to show prejudice in the appellate-delay context." Payne v. State, 289

Ga. 691, 695 (2) (b) (715 SE2d 104) (2011). Thus, although we disapprove of

the inordinate delay occasioned here, we nonetheless conclude that the trial

court did not abuse its discretion in ruling that Veal's due process claim failed.

16

4. Veal also argues that trial counsel was ineffective because trial counsel abandoned him and failed to make reasonable efforts to pursue Veal's motion for new trial, resulting in the significant post-conviction delay.

We do not approve of Ford's handling of Veal's motion for new trial, as the record does not show that he acted diligently in seeking a timely resolution of that motion. But even if we were to conclude that Ford was deficient in this respect, Veal cannot show that he was prejudiced by Ford's deficient performance. We concluded above that Veal has not been prejudiced by the post-conviction delay, and so his ineffective assistance claim on this ground fails. See Shank v. State, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012).

Judgment affirmed.  All the Justices concur.

Decided May 15, 2017.

Murder. Putnam Superior Court. Before Judge Prior.

Michael B. Fulcher, for appellant.

Stephen A. Bradley, District Attorney, T. Wright Barksdale III, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary C. Greaber, Assistant Attorney General, for appellee.