**THIRD DIVISION
ELLINGTON, P. J.,
BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 1, 2018**

# In the Court of Appeals of Georgia

A18A0960. COFFEE v. THE STATE.

BETHEL, Judge.

This case turns on a fundamental principle essential to ensuring fair jury trials in Georgia. Our general rule is that a criminal defendant is entitled to a full panel of *qualified* jurors to which to direct his peremptory strikes. Because this case involves allegations of theft from Walmart[1] and the trial court declined to excuse for cause one of Walmart's shareholders, we reverse.

"On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence." *State v. Robinson*, 275 Ga. App. 117, 117 (619 SE2d 806) (2005) (citation omitted). So viewed, the record shows that over the course of several days in October 2015, Coffee, dressed in a hat and sunglasses, entered three different

---

[1] Lindsey Bernard Coffee was convicted of four counts of theft by shoplifting.

Walmart stores. In each of these stores, surveillance footage showed Coffee moving electronic items to other areas of the store before leaving. The footage also shows Coffee later returning to the store to collect the "staged" items and leaving with the items through the garden center.

Coffee was later arrested at a fourth Walmart after an officer observed him attempting to exit the store with items in his shopping cart. Coffee was indicted on four counts of theft by shoplifting.

During voir dire[2] and prior to trial, Coffee challenged the qualifications of juror #39 based on the juror's ownership of stock in Walmart and her professed "strong feelings" against shoplifters. In response to the challenge, the trial court conducted an unrecorded bench conference. Thereafter, Coffee contends, and the State does not dispute,[3] that the trial court proceeded with voir dire and jury selection with the challenged juror in the venire. After the jury had been impaneled and removed from the courtroom, the remaining panelists were released. The trial court heard argument from the parties on the record regarding the challenge to juror #39.

---

[2] Voir dire was not transcribed.

[3] See Court of Appeals Rule 25 (b) (1) (appellee "shall point out any material inaccuracy or incompleteness of appellant's statement of facts").

2

Coffee then expended one of his peremptory strikes to remove juror #39 from the array after the trial court declined to remove her for cause.

Following trial, Coffee was convicted on all four counts of theft by shoplifting. Coffee filed a motion for a new trial, which the trial court denied following a hearing. This appeal ensued.

1. Coffee argues that the trial court erred in denying his request to remove juror #39 for cause because he was entitled to a full panel of qualified jurors against which he could use his peremptory strikes. We agree.

"The decision to strike a juror for cause lies within the sound discretion of the trial court." *Berry v. State*, 302 Ga. App. 31, 32 (1) (690 SE2d 428) (2010) (citation and punctuation omitted). In general, a defendant is entitled to a panel of 30 qualified jurors (that is, jurors not subject to being excused for cause) to which to direct his peremptory strikes. *See* OCGA § 15-12-160.1; *Kirkland v. State*, 274 Ga. 778, 779-780 (2) (560 SE2d 6) (2002). "Where a corporation is the person injured, it occupies the position of a party at interest, and its stockholders are not competent to serve as jurors in a trial against the alleged wrongdoer" due to their relationship to the "person" having an interest in the case. *Kirkland*, 274 Ga. at 779 (1) (citations and punctuation omitted); *see also Lowman v. State*, 197 Ga. App. 556, 557 (2) (398

3

SE2d 832) (1990) (members of electric membership corporations are disqualified from serving as jurors in criminal trials in which the corporation is the victim of the crime charged). Thus, members of the venire who have stock ownership in a victim company are disqualified to serve as a matter of law and are subject to challenge for cause. *See Kirkland*, 274 Ga. 779 (1). Further, "[t]he defendant's failure to exhaust his peremptory strikes before the twelfth juror was impaneled does not render the error harmless." *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986) (noting that "a true determination of the harm caused by a trial court's refusal to strike an unqualified juror would require omniscience"); *see also Bass v. State*, 183 Ga. App. 349, 352 (358 SE2d 837) (1987).[4] It is well established in Georgia that "the selection of an impartial jury is the cornerstone of the fairness of trial by jury, and in this process, peremptory strikes are invaluable." *DeSantos v. State*, 345 Ga. App. 545, 549 (1) (813 SE2d 782) (2018) (citation and punctuation omitted); *see also Kirkland*, 274 Ga. 779 (1).

Here, the trial court declined to disqualify juror #39 for cause because it was uncertain how much Walmart stock she owned in the "multi-billion" dollar company

---

[4] *Compare Nwakanma v. State*, 296 Ga. 493, 500 (5) (768 SE2d 503) (2015) (trial court's refusal to strike juror for cause harmless where defendant could not show that removal of the juror cost him one of his peremptory strikes).

and the trial court did not believe that her stock ownership in the victim company evidenced any bias.[5] Coffee then had to expend one of his peremptory strikes to remove the juror from the array, though the trial court later noted in its order denying Coffee's motion for a new trial that he did not use all of his strikes. This was the incorrect application of the law.

In light of this error, the trial court erred in denying Coffee's motion for a new trial. *See Lowman*, 197 Ga. App. at 557 (2). Juror #39 was disqualified to serve as a matter of law and should have been excused for cause due to her ownership in the victim company, Walmart. *See Kirkland*, 274 Ga. at 779 (1). Requiring Coffee to use a peremptory strike to remove juror #39 means that Coffee was denied a full panel of qualified jurors, and as a result, his conviction must be reversed and his case remanded for a new trial. *See DeSantos*, 345 Ga. App. at 549 (1).

2. Because of our decision in Division 1, we need not address Coffee's other enumerations of error.

*Judgment reversed. Ellington, P. J., concurs. Gobeil, J., concurs fully and specially.*

---

[5] The trial court also declined to disqualify juror #39 for cause based on her "strong feelings" about shoplifting.

A18A0960. COFFEE v. THE STATE.

G OBEIL, Judge, concurring fully and specially.

I concur fully in the majority opinion because the result is dictated by the application of binding precedent to the facts at hand. I write separately, however, to highlight the fact that more recent precedent from the Supreme Court of Georgia suggests that the law on which the majority opinion relies may not be as broad and unqualified as it appears.

As the majority opinion demonstrates, this case, in which a local retail outlet of a large, publicly-traded corporation was the victim of the alleged crime, bears a

1

striking resemblance to *Kirkland v. State*, 274 Ga. 778 (560 SE2d 6) (2002). Like *Kirkland*, the current case presents the question of whether a prospective juror who owns stock in the corporate victim should be struck for cause. The *Kirkland* Court held that any member of the venire who owned stock in the corporation at issue was "disqualified to serve as a matter of law and [was] subject to challenge for cause." 274 Ga. at 779 (1). In explaining this result, our Supreme Court stated that "[b]ias is conclusively presumed or inferred as a matter of law regardless of actual partiality, where a juror is related to a party. In that circumstance, disqualification on the basis of implied bias is mandatory." Id. at 780 (2) (citation omitted). The Court then concluded that "[w]here a corporation is the person injured, it occupies the position of a party in interest, and its stockholders are not competent to serve as jurors in a trial against the alleged wrongdoer." Id. at 779 (1) (citation omitted).

Given the broad and unqualified holding in *Kirkland*, and given its factual parallels with this case, I agree with the majority's conclusion that the trial court erred in denying Coffee's request to strike juror number 39 for cause. I note, however, that in *Veal v. State*, 301 Ga. 161 (800 SE2d 325) (2017), the Georgia Supreme Court expressed disfavor with per se rules for juror disqualification, such as the one set forth in *Kirkland*. *Veal* involved a murder committed during the armed

2

robbery of a bank. Relying on *Kirkland*, the defendant contended on appeal that trial counsel was ineffective for failing to strike for cause  members of the venire who were customers of the bank, who banked at the branch where the robbery occurred, and/or who had worked or interacted with the murder victim or his daughter at the bank. 301 Ga. at 163-164 (2) (a). The Supreme Court rejected this argument, finding that *Kirkland* was "inapposite" as there was "no evidence" that the jurors who were also customers of the bank had any ownership interest in that corporate entity. Id. at 164 (2) (a). The Court further found that jurors could not be disqualified simply because they had a long-standing customer relationship with the bank, stating "we have long ruled that a juror's knowledge of, or non-familial relationship with, a party is not a per se disqualification." Id. Instead, such knowledge or relationship supports disqualification as a matter of law only if it results in the juror's "having a fixed opinion of the accused's guilt or innocence or a bias for or against the accused." Id. Finding that the contested jurors swore under oath they would be fair and impartial, that none of them expressed a bias or a fixed opinion regarding the defendant's guilt or innocence, and that no other evidence was introduced to cast doubt on their fitness to serve, the *Veal* court concluded that any challenge for cause would have lacked merit. Id. at 166 (2) (b). Compare *Kirkland*, 274 Ga. at 779 (1) ("[a]s applied to

3

[defendant's] case, members of the venire who responded affirmatively to the court's inquiry concerning a business relationship to the [corporate victim] were disqualified to serve as a matter of law and were subject to challenge for cause").

The holding in *Veal* is premised on the long-standing rule that, in general, "[t]he law presumes that jurors are impartial, and the complaining party has a burden to overcome that presumption." *Veal*, 301 Ga. at 165 (2) (b). Whether a party has met that burden, and therefore "the decision to strike juror for cause[,] lies within the sound discretion of the trial court." *Berry v. State*, 302 Ga. App. 31, 32 (690 SE2d 428) (2010) (citation and punctuation omitted). Thus, although the *Veal* court distinguished *Kirkland*, the law and the reasoning set forth therein suggest that individual circumstances should be considered in assessing whether a prospective juror should be disqualified based upon his or her non-familial relationship with a party, even where that relationship is financial in nature.

In the case before us, it appears no inquiry was made regarding the amount of stock owned by the juror or its value. Nor was the juror questioned regarding any potential impact his stock interest might have on his ability to be impartial. In light of *Veal*, however, it seems that such information would be relevant to the issue of whether the juror was disqualified. For example, a situation where a juror owns one

4

share in a large, publicly-traded company is very different from one where the juror owns 25% of a company. Information concerning the juror's knowledge of the case and his or her expressed ability to be fair and impartial would also be relevant. In short, to exclude jurors as a matter of law simply because they own some amount of stock in a large, publicly-traded corporation, regardless of the amount of their interest or their knowledge of the case, and without any inquiry into their ability to be impartial, seems inconsistent with *Veal*'s balancing approach.[6]

In closing, I recognize that the right to an impartial jury plays a critical role in our judicial system, as do the legal rules formulated to protect that right. I further recognize that the breadth of the bright line rule articulated in *Kirkland* serves to protect that right. Nevertheless, the more balanced approach articulated in *Veal* would

---

[6] It appears that the per se rule adopted by *Kirkland* has its genesis in the civil context – i.e., in the context of a corporate entity who, rather than being the victim of a crime, is seeking or defending against a significant money judgment. See, e. g., *Georgia R. R. v. Cole*, 73 Ga. 713, 715 (1885). In that circumstance, a stockholder would have a definitive financial stake in the verdict and "disqualification on the basis of implied bias [would be] mandatory." *Kirkland*, 274 Ga. at 779 (2) (citation and punctuation omitted).

5

seem to protect the interests of the judicial system without sacrificing the legal protections necessary to ensure parties a fair trial.[7]

---

[7] Significantly, the bright-line rule articulated in *Kirkland* is becoming more complicated to apply in light of the millions of Americans who have some sort of retirement account or other financial plan that involves stock ownership. According to the Pension Rights Center, and based upon the Bureau of Labor Statistics' National Compensation Survey for 2017, 54% of all American workers (full and part-time) participate in a such a retirement plan through their workplace.