305 Ga. 776
FINAL COPY

S19A0346. WILLIAMS v. THE STATE.

ELLINGTON, Justice.

Demarcio Williams appeals his convictions for murder and attempted armed robbery in connection with the shooting death of James Akridge.[1] Williams contends that he received ineffective

---

[1] Akridge was killed on June 28, 2010. A Johnson County grand jury returned an indictment on October 27, 2010, charging Williams with malice murder, felony murder (predicated on aggravated assault), aggravated assault (shooting Akridge), aggravated assault (pointing a gun at Akridge), and criminal attempt to commit a felony (attempted armed robbery of Akridge). Following a November 7-15, 2011 trial, the jury found Williams guilty on all counts. On November 15, 2011, the trial court sentenced Williams to life imprisonment without parole for murder, 20 years for aggravated assault (pointing a gun at Akridge), to be served consecutively, and 10 years for attempted armed robbery, to be served concurrently. Trial counsel filed a motion for new trial on November 18, 2011. On November 14, 2012, the court entered an amended sentencing order, sentencing Williams to life imprisonment without parole for murder and 10 years for attempted armed robbery, to be served consecutively. The amended sentencing order indicated that the felony murder verdict and both the aggravated assault verdicts merged with the malice murder conviction, although the felony murder verdict was actually vacated as a matter of law. *Stewart v. State*, 299 Ga. 622, 627-628 (3) (791 SE2d 61) (2016). Post-conviction counsel filed amended motions for new trial on August 7, 2012, December 13, 2012, and November 16, 2015. After conducting a hearing on August 15, 2012, and a second hearing on January 5, 2016, the court denied the motion on August 10, 2017. (The trial court declined to consider a motion for new trial that Williams filed pro se on September 27, 2013, because Williams was represented by counsel, and declined to consider

assistance of counsel, that the trial court erred in having improper communication with a juror and in denying his motion for a directed verdict, and that the prosecutor improperly commented on his silence. Finding no error, we affirm.

Viewed in the light most favorable to the prosecution, the evidence presented at trial shows the following. On June 28, 2010, the victim, James Akridge, was shot in his home in Wrightsville. He called 911. A patrolman with the Johnson County sheriff's office and an officer with the Wrightsville police department responded and heard Akridge inside, calling for help. When the responding officers gained entry, they found Akridge kneeling in front of a couch and slumped across the seat cushions. Akridge, who was white, told the patrolman that he had been shot; he identified his assailant only as "a black guy." Within an hour of calling 911, Akridge died as a result

_____

an amended motion for new trial filed by appellate counsel on May 26, 2017, because Williams's motion for new trial had already been heard.) Williams filed a timely notice of appeal, and this case was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

of a gunshot wound to his lower back. At that point, the Georgia Bureau of Investigation took over the investigation.

During the investigation, the GBI agent interviewed John Harris, who was a long-time friend of Williams. Harris disclosed that he had asked Williams, who is black, about rumors he was hearing that Williams had shot and killed "a white guy in Wrightsville." Williams told Harris that he and Jarvis Miller, who was known as "Jughead," met with a man in Wrightsville, supposedly for a drug deal but with the intention of robbing him. Williams told Harris that the man "was reaching around," Williams got scared, and he shot the man in the back, although he did not mean to shoot him. The GBI agent asked Harris if he would try to record a conversation with Williams on the same subject, and he agreed. Several days later, Harris spoke with Williams and secretly recorded the conversation. During that conversation, Williams confirmed several details consistent with their earlier conversation. Harris testified at Williams's trial, and the recorded conversation was also played for the jury.

Antonio Surrey, an acquaintance of Williams and Harris, testified that, sometime after the murder, he gave Williams a ride. During that ride, Williams told him that he and "Jughead" had gone to a man's house to rob him and, when the victim started fighting back, Williams panicked and shot him. Surrey also had a conversation with Williams and Harris together, when Williams said that he robbed and shot the man. Another witness, Robert Jackson, testified that, while he was confined in the same jail as Williams, Williams told him that he and "Miller" went to rob the victim; Miller told Williams that the victim got a good look at their faces; Williams told the victim to put his hands behind his back and get on his knees; the victim said, "please, don't kill me"; and Williams put the gun to his back and shot and killed him.

At trial, the State showed that, in the hour before Akridge called 911, he exchanged text messages with, and placed a telephone call to, numbers being used by Williams. Williams did not testify at trial.

1. Williams does not challenge the sufficiency of the evidence. Nevertheless, as is our customary practice in murder cases, we have independently reviewed the record and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Williams contends he received ineffective assistance of counsel in several respects. To obtain relief based on ineffective assistance of counsel, an appellant must show both that his counsel's performance was constitutionally deficient and that this deficient performance prejudiced him. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, [an appellant] must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms."

[2] We note that Williams argues that the trial court erred in denying his motion for a directed verdict as to one of the counts of aggravated assault on a basis other than the sufficiency of the evidence. See Division 4, infra.

*Anthony v. State*, 303 Ga. 399, 410 (9) (811 SE2d 399) (2018) (citation and punctuation omitted). To show prejudice, an appellant must prove that his lawyer's error was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U. S. at 687 (III). To that end, an appellant "must show a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." *Anthony*, 303 Ga. at 410 (9) (citation and punctuation omitted).

> An appellant must prove both prongs of the *Strickland* test, and if he fails to prove one prong, it is not incumbent upon this Court to examine the other prong. In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous.

*Winters v. State*, 305 Ga. 226, 230 (4) (824 SE2d 306) (2019) (citations and punctuation omitted).

(a) Williams contends that his counsel was ineffective for failing to ask that a certain juror be removed for cause. The record shows that, during voir dire, defense counsel asked the venire whether anyone had "a close relative or a friend or a son that's a

policeman or a GBI agent or an FBI agent or a marshal." One prospective juror responded that her husband and the Sheriff were second cousins and that the families were near neighbors. Asked whether that would affect her ability to listen to the evidence, she responded with uncertainty.[3] Defense counsel did not move to strike the prospective juror for cause.

Williams contends that his counsel should have moved to strike the juror for cause pursuant to OCGA § 15-12-163 (b) (4), which provides, in pertinent part, that the State or the accused may object to a juror on the basis that "the juror is so near of kin to the prosecutor . . . as to disqualify the juror by law from serving on the jury[.]"[4] The record does not support a finding, however, that the Sheriff had anything to do with obtaining any warrant or indictment

---

[3] The record shows that the juror responded, "You know, I can't say for sure . . . but I don't think it would [affect my ability to listen to the evidence]. . . . I honestly can't say, you bring his name up [sic], how I would feel, honestly. I mean, that's the truth. . . . [W]e don't socialize, no, but being in that situation, I couldn't tell you."

[4] At the time of Williams's trial, "so near of kin" as to disqualify a juror by law from serving on a jury was defined by former OCGA § 15-12-135 (a) as being related "by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law."

in Williams's case[5] or could otherwise be deemed "the prosecutor" in the case. *Stokes v. State*, 281 Ga. 825, 828-829 (2) (c) (642 SE2d 82) (2007) (a juror's mother who was employed as a victim/witness coordinator for the district attorney's office was not a prosecutor under OCGA § 15-12-163 (b) (4), and a juror's girlfriend who was employed as an assistant district attorney was not herself the prosecutor in the defendant's case and was not related by marriage to the juror under OCGA § 15-12-163 (b) (4)); *Bryant v. State*, 270 Ga. 266, 271 (4) (507 SE2d 451) (1998) (a juror's son-in-law, a GBI agent who investigated the victim's murder, was not a prosecutor under OCGA § 15-12-163 (b) (4), "but rather merely an officer of the State assigned to investigate the crime for which the appellant was being tried" and "a potential witness at trial"). Therefore, a motion to strike the juror on the only basis Williams asserts would have

---

[5] See *Spence v. State*, 238 Ga. 399, 400 (233 SE2d 363) (1977) (under Ga. Code Ann. § 59-804, the predecessor to OCGA § 15-12-163, "[t]he general rule is that [a] prosecutor is one who instigates a prosecution by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based" (citations and punctuation omitted)).

been meritless, and the failure to make a meritless motion to strike does not constitute ineffective assistance of counsel. *Veal v. State*, 301 Ga. 161, 166 (2) (800 SE2d 325) (2017).

(b) Williams contends his counsel was ineffective for failing to object to the State's motion to strike a juror for cause. The record shows that, at the end of voir dire, a prospective juror, R. M., approached the prosecutor and defense counsel and told them that she knew the girlfriend of Williams's accomplice, Jarvis Miller, and that she knew something about the case just from knowing the girlfriend. The State moved that she be struck. Defense counsel responded, "I don't care."

Williams contends that there was no evidence that R. M. had an opinion about the case that was so definite that it could not be changed by the evidence, and, therefore, counsel should have objected to the State's motion to strike R. M. for cause. It is well settled that a defendant has no vested interest in any particular juror, but rather is entitled only to a legal and impartial jury. *Willis v. State*, 304 Ga. 686, 701 (820 SE2d 640) (2018); *Coleman v. State*,

286 Ga. 291, 296 (5) (687 SE2d 427) (2009); *Bell v. State*, 276 Ga. 206, 207 (2) (576 SE2d 876) (2003). Nothing in the record shows that any juror sworn to hear Williams's case was not a legal and impartial juror. Therefore, pretermitting any deficiency in counsel's performance, Williams has not shown that any prejudice resulted from his counsel's failure to object to the State's motion to strike the prospective juror, R. M., for cause.

(c) Williams contends his counsel was ineffective for failing to object to a private communication between the trial judge and a juror. The record shows that, after the jury was selected, the judge informed the prosecutor and defense counsel that he intended to tell a juror who was pregnant that she should just raise her hand if she needed a restroom break and that he would very briefly stop the proceedings until she returned to the courtroom. Neither counsel objected. Williams contends that, because there is no record of what the judge and the juror spoke about, this Court must assume that the communication was prejudicial to him. As we have explained, a criminal defendant's constitutional right to be present at and to see

and hear all the critical proceedings which are had against him "is a fundamental right and a foundational aspect of due process of law." *Ward v. State*, 288 Ga. 641, 645 (4) (706 SE2d 430) (2011) (citation and punctuation omitted). "'Thus, where the accused is involuntarily absent from the proceedings, the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury.'" Id., quoting *Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999).

Nothing in the record in this case shows that the judge made any comment to the juror outside the presence of Williams and his counsel other than telling the juror to raise her hand if she needed a restroom break, a communication relating to the comfort and convenience of the jury. Thus, pretermitting any deficiency in counsel's performance, Williams failed to carry his burden of showing that defense counsel's failure to object prejudiced him. *Waldrip v. State*, 266 Ga. 874, 879 (2) (471 SE2d 857) (1996).

(d) Williams contends that his counsel was ineffective for failing to object or move for mistrial due to the prosecutor's comment

on the defendant's pre-arrest silence during the State's closing argument. Specifically, he cites to the statement, "the response that you get is a combination of silence, which under the law is attached agreement [sic]."[6] Williams contends that a bright-line rule then in effect prohibited the State from commenting on a defendant's pre-arrest silence or failure to come forward, citing *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), overruled on other grounds as recognized in *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999),[7] and that, therefore, his counsel's failure to object to the comment constituted deficient performance. As to the prejudice prong of the *Strickland* analysis, he argues that leading a jury to draw a negative inference based upon a defendant's exercise of his right against self-incrimination is "inherently prejudicial and [his

---

[6] Viewing the comment in context, it appears that the prosecutor might have said "a tacit agreement." See n.8, infra.

[7] Williams is correct that, because he was tried before the January 1, 2013 effective date of Georgia's new Evidence Code, the bright-line rule set out in *Mallory* applies to his case. *Wright v. State*, 300 Ga. 185, 186 n.2 (794 SE2d 105) (2016); *Bradford v. State*, 299 Ga. 880, 887 n.7 (792 SE2d 684) (2016); *Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016). We note that, in another opinion issued today, we hold that the new Evidence Code abrogated *Mallory*'s rule. See *State v. Orr*, 305 Ga. 729 (827 SE2d 892) (2019).

trial counsel's] failure to object to such prejudice undermined confidence in the result of the proceeding[.]"

Even assuming that the rule in *Mallory* applies to the prosecutor's comment and that counsel performed deficiently by failing to raise an objection based on *Mallory* during the prosecutor's argument, we conclude that the failure to object likely did not contribute to the proceeding's outcome. The prosecutor's fleeting comment regarding Williams's failure to deny shooting Akridge came during his description of Williams's second, audio-recorded conversation with Harris about the shooting.[8] Evidence presented at

---

[8] The prosecutor argued that, to induce Williams to repeat his earlier confession, Harris's tactic was to tell Williams that other people were trying to say that Williams was "the only one there . . . that Jarvis Miller . . . didn't have a gun, and he didn't want to kill the man and all of this." The prosecutor went on:

> [W]hat's the defendant's response? The defendant's response is not "I didn't participate in that." The defendant's response is not . . . "what are you talking about?" . . . No actually, *the response that you get is a combination of silence, which under the law is attached agreement* [sic], [and] correction on certain points[.] . . . [The defendant's response was] along the lines of, "well, they're going to tell on me. Well, if I get caught, I'm going to tell on them, because that makes no sense, them sitting there talking about all of this, because when they're telling on me, they're telling on themselves, too, because they were involved, too," talking about Mr. Miller.

(Emphasis supplied.)

trial established that Williams affirmatively admitted to Harris, in an earlier conversation, that he shot Akridge and also affirmatively admitted shooting Akridge to two other people. In addition to Williams's multiple, consistent confessions, the evidence established that Williams communicated with Akridge just before the shooting, which was consistent with his statements that he and Miller went to Akridge's home, purportedly to sell him drugs, with the intention of robbing him. In light of the strength of the evidence, we conclude that no prejudice resulted from trial counsel's failure to raise a *Mallory* objection to the prosecutor's argument.[9] Consequently, Williams has not shown ineffective assistance of counsel in this

---

[9] See *Wallace v. State*, 272 Ga. 501, 504 (3) (a) (530 SE2d 721) (2000) (in light of the strength of the physical and circumstantial evidence identifying the appellant as the perpetrator of his wife's murder, the appellant failed to carry his burden of showing that prejudice resulted from his trial counsel's failure to object to the prosecutor's argument that, while the appellant did not admit anything in response to certain inquiries made by the police, the appellant's "cold expression" and physical movements during questioning indicated his guilt); *Scott v. State*, 305 Ga. App. 710, 717 (2) (a) (700 SE2d 694) (2010) ("When determining whether the State's unchallenged comments or questions about a defendant's right to remain silent prejudice that defendant, we consider a number of factors[,]" including "whether, in light of the evidence presented, there was a possibility that the State's improper comments contributed to the guilty verdict." (citation omitted)).

regard. *Wallace v. State*, 272 Ga. 501, 504 (3) (a) (530 SE2d 721) (2000).

(e) Williams contends his counsel entirely failed to subject the prosecution's case to meaningful adversarial testing such that prejudice should be presumed for the purposes of his claim of ineffective assistance of counsel.[10] Specifically, Williams contends that, "for a great deal of the trial," his defense lawyer "could not hear what was happening and continually told witnesses he could not understand them." Williams argues that his counsel's inability to hear compromised his ability to advocate for his client. The record, however, does not support the assertion that any hearing difficulties

---

[10] See *Strickland*, 466 U. S. at 692 (III) (B) (identifying an "[a]ctual or constructive denial of the assistance of counsel altogether" as one of the rare instances in which prejudice is legally presumed for a Sixth Amendment claim); *United States v. Cronic*, 466 U. S. 648, 659 (III) (104 SCt 2039, 80 LE2d 657) (1984) ("[I]f [defense] counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice [is] required" in such a case. (citations omitted)); *Charleston v. State*, 292 Ga. 678, 682-683 (4) (a) (743 SE2d 1) (2013) (*Cronic* established a narrow exception to the general *Strickland* standard, which exception applies only when counsel's failure to subject the State's case to adversarial testing is complete and occurs throughout the proceeding, not merely at specific points).

pervaded the trial. Rather, Williams cited to five instances when his counsel indicated he was having trouble hearing soft-spoken witnesses.[11] In addition, Williams refers back to specific instances of allegedly deficient performance already considered herein, including counsel's saying "I don't care" in response to the State's motion to strike a juror for cause and failing to object to the prosecutor's comment on his silence. See Division 2 (b) and (d), supra.

Even if Williams's trial counsel failed to act as an advocate on the several occasions specified, Williams's assertion that his counsel entirely failed to subject the State's case to adversarial testing does not meet the stringent standard that merits a presumption of prejudice under *Cronic*, and therefore *Strickland*'s two-part test remains the appropriate standard to evaluate his claims of ineffective assistance. *Wainwright v. State*, 305 Ga. 63, 68 (3) (823 SE2d 749) (2019); *Charleston v. State*, 292 Ga. 678, 682-683 (4) (a) (743 SE2d 1) (2013). The record shows that, when counsel was

---

[11] The five instances occurred during the direct examinations of the GBI agent (twice), Harris (twice), and Jackson (once).

unable to hear a particular witness, he raised the issue immediately, the judge instructed the witness to move closer to the microphone, and the preceding answer was repeated. Because the record does not show that counsel missed any testimony, Williams has not shown any prejudice in this regard. Nor has he shown any prejudice arising from the other specific instances of alleged failure to subject the State's case to adversarial testing. See Division 2 (b) and (d), supra.

Finally, even accepting for the sake of analysis that trial counsel erred in all five of the ways Williams alleges, he has not demonstrated a reasonable probability that the cumulative effect of counsel's alleged professional deficiencies affected the outcome of the proceeding. Accordingly, the trial court properly rejected Williams's ineffective assistance of counsel claim. *Toomer v. State*, 292 Ga. 49, 59 (4) (734 SE2d 333) (2012), citing *Schofield v. Holsey*, 281 Ga. 809, 811 n.1 (642 SE2d 56) (2007).

3. Williams contends that the trial court erred in having private communications with a pregnant juror and that, in the absence of any record of what the judge said to the juror, the

communication is presumed to be prejudicial as a matter of law. Williams waived any objection to the judge's proposed ex parte communication with the juror by failing to object at the time, *Anthony v. State*, 303 Ga. 399, 407 (5) (811 SE2d 399) (2018).[12] In addition, as discussed in Division 2 (c), supra, nothing in the record shows that the judge made any comment to the juror other than telling the juror to raise her hand if she needed a restroom break. This claim of error presents no basis for relief.

4. Williams contends that the aggravated assaults charged in Counts 3 and 4, aggravated assault by shooting Akridge and by pointing the firearm at him, were not distinct, successive assaults, and, therefore, that the trial court erred in denying his motion for directed verdict on one of the counts. Although the jury found Williams guilty on both counts of aggravated assault, however, any error in the directed verdict ruling is moot, given that both aggravated assault verdicts merged with the murder conviction.

___

[12] Cf. *Carter v. State*, 273 Ga. 428, 430 (5) (541 SE2d 366) (2001) (where the record did not show that the defendant knew of the trial court's ex parte communication with the jury, the error was not waived).

*Faust v. State*, 302 Ga. 211, 213 n.3 (805 SE2d 826) (2017); *Anderson v. State*, 299 Ga. 193, 196 n.4 (787 SE2d 202) (2016); *Long v. State*, 287 Ga. 886, 887-888 (1) (700 SE2d 399) (2010).

5. Williams contends that he is entitled to a new trial because the prosecutor improperly commented on his pre-arrest silence. Williams waived this claim of error by failing to object at the time of the comment. *McClarin v. State*, 289 Ga. 180, 183 (3) (b) (710 SE2d 120) (2011). In any event, the comment was not harmful, as explained in Division 2 (d), supra.

Judgment affirmed. All the Justices concur.

Decided May 6, 2019.

Murder. Johnson Superior Court. Before Judge Green.

Tobe C. Karrh, for appellant.

L. Craig Fraser, District Attorney, Kelli M. Adams, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith,

Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.