In the Supreme Court of Georgia

Decided: October 5, 2021

S21A0774.  TYSON v. THE STATE.

BOGGS, Presiding Justice.

After a 2008 jury trial, LeMichael Tyson was convicted of felony murder and cruelty to children in connection with the beating death of his girlfriend's 22-month-old daughter, Kei'Mariona Bradley. He appeals, asserting 11 enumerations of error. For the reasons stated below, we affirm.[1]

---

[1] The murder occurred on April 14, 2007. On June 22, 2007, an Oglethorpe County grand jury indicted Tyson for malice murder, felony murder based on cruelty to a child in the first degree, and two counts of cruelty to a child in the first degree. Tyson was tried before a jury from May 27 to 29, 2008. The trial court directed a verdict of acquittal as to one of the child-cruelty counts; the jury found Tyson not guilty of malice murder but guilty of felony murder and the remaining child-cruelty charge. On June 4, 2008, Tyson was sentenced to serve life in prison for felony murder; the trial court merged the child-cruelty charge into the felony murder conviction. On June 9, 2008, Tyson's trial counsel filed a timely motion for new trial, which was amended by his first appellate counsel on October 26, 2012, and by his second appellate counsel on October 14, 2019. After a hearing on October 28, 2019, the motion for new trial was denied on December 31, 2019. Tyson's notice of appeal was filed on January 14, 2020, and the case was docketed in this Court for the term beginning in April 2021 and submitted for decision on the briefs.

The evidence at trial showed that in April 2006, Tyson and the victim's mother, Crystal Bradley, became involved in a romantic relationship. In February 2007, Tyson moved in with Bradley. On April 13, 2007, after finishing her shift as a certified nursing assistant at Quiet Oaks Nursing Home in Crawford, Bradley picked up Kei'Mariona from her babysitter. Kei'Mariona was sick that day and had been vomiting, but showed no other signs of injury. That evening, Bradley gave Kei'Mariona a bath before putting her to bed. Bradley testified that because her daughter was in daycare, she would check her "from head to toe" for any bruises or scratches; that evening, she observed no bruises, scratches or marks.

The next morning, Bradley left for work at 6:00 a.m., and Tyson had Kei'Mariona in his care for the rest of the day. At approximately 5:00 p.m., Tyson called Bradley and told her that "Kei'Mariona had stopped breathing." At 5:39 p.m., Tyson called 911 to report that Kei'Mariona was not breathing, and ambulances were dispatched. Bradley returned home and found the paramedics already at the apartment.

A paramedic testified that Kei'Mariona was unresponsive, without a pulse, and limp, but she put the child on a respirator and started CPR. The paramedic observed bruises on the child's chest. At Athens Regional Hospital, medical staff pointed out bruises and marks on the child that Bradley had not seen before. From Athens Regional, the child was transported to Egleston Children's Hospital in Atlanta and remained unresponsive en route.

The next morning, Kei'Mariona was pronounced dead from blunt force injuries. The medical examiner testified that Kei'Mariona had significant hemorrhage in her eyes consistent with violent shaking of her body, as well as contusions on her head and internal bleeding and swelling of the brain indicating trauma. The medical examiner concluded that Kei'Mariona's death resulted from "significant traumatic injuries of the head," normally seen in a car accident, a fall from a very significant height, or an assault. She testified that the fatal injuries would have caused immediate severe effects and abnormal behavior, and that the injuries were not accidental but were inflicted deliberately.

Tyson was interviewed by GBI agents and confirmed that Kei'Mariona was with him for the entire day while he retrieved her car seat from Bradley's car at the nursing home, visited his mother's house, and ran several errands before returning home. Tyson stated that as he was driving back to the apartment with Kei'Mariona, he saw Bradley leaving the post office going back to her job, and he confirmed that no one else was at the apartment with him except Kei'Mariona. After they returned home, they had lunch, and then Kei'Mariona watched TV upstairs while he put things away. On one of several trips upstairs, Tyson found that Kei'Mariona had had a bowel movement, so he took her to the bathroom, cleaned her up, and put her in her bed. He went back downstairs, put some things away, watched a movie, and talked to his parents on the phone. At about 5:00 p.m., when he went to wake the child from her nap, she was non-responsive, he could not feel a heartbeat, and he did not think she was breathing. When confronted with the fact that the victim died from blunt force injuries inflicted within 24 hours of her death, Tyson stated, "I will be honest with you. I really don't know

4

what happened."

At trial, Tyson asserted in his defense that if someone hurt Kei'Mariona, it must have been Bradley. Tyson did not testify, but called a long-time friend, Becky Roberts, as a witness. Roberts had observed Bradley at a social gathering at Roberts' lake house to which Bradley brought her own niece, who was in her care. Roberts testified that Bradley teased her niece to the point of tears by repeatedly saying, "'I am leaving' – and this went on five or six times until the child wept and cried and [her] arms were outstretched." After being instructed by the trial court that she could not "testify what someone else says," Roberts testified that Bradley's behavior was "tormenting a child and it was funny to her and it was embarrassing to [Tyson], it was embarrassing to us, and it was frightening to this little child. And it happened one more time, she got in the car and then got back out of the car and did it one more time." The witness then testified that in her opinion this behavior was not consistent with what anyone in the medical field should do. She also observed that Bradley did not correct or discipline her niece

and did not take proper care of her while they were boating on the lake, not watching her or holding her, so that the witness had to intervene several times to keep the child from falling overboard.

1. In Tyson's first enumeration of error, he contends that he was denied a fair trial based on juror bias, because the jury foreman worked at Bradley's place of employment and knew her. He asserts that the juror deceitfully concealed his knowledge of Bradley during voir dire and that the juror was biased in favor of Bradley.

Voir dire was not taken down, but the juror testified at the hearing on Tyson's motion for new trial as follows. On voir dire, the juror was asked where he was employed, and responded, "Quiet Oaks Health Care." He was asked if he knew the parties involved, and testified in individual voir dire questioning that he "was aware of Ms. Bradley, that I had worked with her, and I knew her." The juror was asked during voir dire if he had formed any opinion of the guilt of the accused, and he responded that he had not done so. He also was asked in voir dire whether he had any bias or prejudice and responded that he had none. The juror further testified that he and

6

Bradley were not close friends and did not socialize outside of work, and that he had no knowledge of her reputation as a mother.[2] In its order denying Tyson's motion for new trial, the trial court specifically found that the juror "disclosed his knowledge and work relationship with the victim's mother."

As Tyson acknowledges, in order to obtain a new trial based on juror misconduct in voir dire, he must show that "(1) the juror failed to answer honestly a material question on voir dire and (2) a correct response would have provided a valid basis for a challenge for cause." (Citation and punctuation omitted.) *Anderson v. State*, 302 Ga. 74, 77 (2) (805 SE2d 47) (2017). See also *Glover v. State*, 274 Ga. 213, 214 (2) (552 SE2d 804) (2001).[3]

---

[2] At the time of the hearing on Tyson's motion for new trial, the juror was the administrator of the nursing home and its custodian of records. But he testified at the hearing that at the time of trial, he was "the social worker" and worked on a different schedule from Bradley. He estimated that at the time of trial, he saw her approximately three days a week.

[3] The Attorney General's contention that Tyson's claim is not preserved due to his failure to make a contemporaneous motion to excuse the juror, see *Veal v. State*, 301 Ga. 161, 163 (2) (800 SE2d 325) (2017), is without merit because Tyson alleges here that the juror concealed information during questioning. See, e.g., *Anderson*, 302 Ga. at 80 nn. 2 & 3 (2) (a) (citing federal case law regarding intentional misrepresentation or concealment of

Here, Tyson has not shown that the juror in question concealed his relationship with Bradley. While Tyson asserts that the trial court's finding with respect to the juror's disclosure was "conclusory," it was directly supported by the juror's testimony at the hearing on Tyson's motion for new trial. Tyson complains that the trial court gave no reason in its order for discounting his trial counsel's testimony that he would have struck any prospective juror who knew Bradley or was familiar with the nursing home at which she worked. But "[t]he credibility of the witnesses at the motion for new trial hearing was for the trial court to determine." (Citations, punctuation, and footnote omitted. *State v. Thomas*, 311 Ga. 407, 416 (3) (a) (858 SE2d 52) (2021). And "[i]t is also well established that the trial court's findings of fact on motion for new trial are upheld unless clearly erroneous." (Citations and punctuation omitted.) *Strother v. State*, 305 Ga. 838, 850 (6) (828 SE2d 327) (2019).

---

information by prospective jurors).

Here, the trial court made a specific factual finding, and we cannot say that the trial court clearly erred in crediting the direct and positive testimony of the juror, rather than relying on trial counsel's testimony to reach the indirect and speculative conclusion that, because counsel would have struck any juror who had a relationship with Bradley or with the nursing home, the juror therefore must have deceptively failed to reveal such a relationship.[4]

> Because [Tyson] has failed to demonstrate that [the juror] answered questions dishonestly during voir dire, he has failed to meet the requirements of the first prong of the two-pronged test set forth in *Glover* for determining whether a defendant is entitled to a new trial for juror misconduct — that the juror failed to give honest answers to voir dire questions. The trial court did not err in denying the motion for new trial on this ground.

*Anderson*, 302 Ga. at 80 (2) (a).

2. In two related enumerations of error, Tyson contends that the failure to take down and transcribe the jury voir dire in its

---

[4] Tyson also makes the alternative claim that if counsel failed to "ask any questions that would reveal this close relationship or missed the disclosure, then counsel was ineffective in failing to explore this further during voir dire and requesting that [the juror] be excused for cause." We address this contention in Division 6 (a).

entirety was error and a due process violation.[5] But, as we recently held after a review of the applicable law with respect to the takedown and transcription of voir dire, "our precedent holds otherwise for non-death penalty cases like [Tyson]'s, and he offers no compelling reason to overturn that precedent." *Allen v. State*, 310 Ga. 411, 419 (6) (851 SE2d 541) (2020). Moreover, "if a defendant wants a more complete record of voir dire, he must make a specific request to that effect. This holding has been reiterated many times." (Citations omitted.) Id. at 420 (6).

Tyson relies upon *Sheard v. State*, 300 Ga. 117 (793 SE2d 386) (2016), but that case is distinguished on its facts. In *Sheard*, the original trial transcript was discovered to be incomplete, and "[t]hough some portions were recovered, the entire transcript was never located." Id. at 119 (2). In particular, the transcript of a Saturday session, including the trial court's instructions to the jury, was never recovered. Id. In holding that a new trial was required,

---

[5] The trial court's general qualification questions to the prospective jurors are included in the trial transcript.

10

this Court noted that

> while certain portions of a trial, *such as voir dire and opening statements*, need not be transcribed in non-death cases, the jury charge – which is missing here – is a crucial portion of trial in which jurors are instructed on the applicable law, on how to evaluate the evidence, and on how to deliberate and reach a verdict.

(Citations and footnote omitted; emphasis supplied.) Id. at 121 (2).

Here, by contrast, the court reporter was not required to "exactly and truly record or take stenographic notes of" nor transcribe the material complained of. OCGA § 17-8-5 (a).[6] See also *Pearson v. State*, 311 Ga. 26, 32 (4) (855 SE2d 606) (2021).

---

[6] That subsection provides:

On the trial of all felonies the presiding judge shall have the testimony taken down and, when directed by the judge, the court reporter shall exactly and truly record or take stenographic notes of the testimony and proceedings in the case, except the argument of counsel. In the event of a verdict of guilty, the testimony shall be entered on the minutes of the court or in a book to be kept for that purpose. In the event that a sentence of death is imposed, the transcript of the case shall be prepared within 90 days after the sentence is imposed by the trial court. Upon petition by the court reporter, the Chief Justice of the Supreme Court of Georgia may grant an additional period of time for preparation of the transcript, such period not to exceed 60 days. The requirement that a transcript be prepared within a certain period in cases in which a sentence of death is imposed shall not inure to the benefit of a defendant.

Tyson also asserts that significant portions of the transcript other than the individual voir dire questions appear to be missing, but this statement is belied by the record.[7] Moreover, when an appellant claims that some parts of a transcript are missing, he generally has the burden of completing the record to support his contentions, see *Pearson*, 311 Ga. at 33 (4), and the proper remedy for any alleged omissions is provided by OCGA § 5-6-41 (f).[8] See id.;

[7] For example, Tyson asserts with respect to the testimony of a GBI agent that "it is clear that something is missing from this transcription" because one of his answers consisted of only two words. However, the question put to the witness was, "The question begins with what two words?" thus explaining the brief response. Tyson also complains that the transcript does not contain opening statements, but he did not request that they be transcribed, and "the argument of counsel" has been explicitly excluded from the requirements of the relevant statute since at least 1876. See OCGA § 17-8-5 (a); *Allen v. State*, 310 Ga. 411, 420 n.9 (6) (851 SE2d 541) (2020).

[8] That subsection provides:
Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court.

*Johnson v. State*, 302 Ga. 188, 197-198 (3) (c) (805 SE2d 890) (2017).

Here, Tyson correctly sought to supplement the record regarding voir dire by calling the juror in question as a witness at the hearing on his motion for new trial. But he has not sought to supplement the trial transcript or otherwise perfect the record with respect to any other material that he now speculates may be missing.[9] See *Pearson*, 311 Ga. at 32-33 (4) (appellant's due process rights not violated when he made no effort to supplement record through testimony of trial counsel); see also *Morris v. State*, 308 Ga. 520, 526 n.4 (2) (842 SE2d 45) (2020) (appellant could not show error when he failed to move to amend or correct purportedly inaccurate transcript). Moreover, Tyson's speculation that additional portions of the trial transcript may be incomplete is insufficient by itself to warrant reversal in the absence of a showing of harm. "[M]ere

___

[9] Tyson contends that he could not obtain testimony regarding events at trial because the trial judge, the court reporter, and a courtroom deputy have died. But Tyson's trial counsel was available and testified at the hearing on Tyson's motion for new trial with regard to various matters that occurred at trial. And nothing in the record indicates that the prosecutors at trial or other relevant witnesses were unavailable for further perfection of the record.

speculation that inaccuracies or omissions exist" in a transcript is not sufficient to establish harm. (Citation omitted.) *Morris*, 308 Ga. at 526.

3. Tyson asserts that his right to due process was violated by the eleven-and-a-half-year delay in his appeal. An initial motion for new trial was filed by Tyson's trial counsel on June 9, 2008, and the trial transcript was completed and certified less than 30 days later. Tyson's first appellate counsel, Stephen Bailey Wallace II, appeared on his behalf on February 25, 2009, and requested a hearing on the motion. The matter was set by the trial court for a hearing several times in 2010 and 2011 at Wallace's request, but the hearings were postponed after Wallace filed conflict letters. On October 26, 2012, Wallace filed an amended motion for new trial, but never requested a hearing. Nothing more appears in the record until the trial court issued a rule nisi on September 7, 2018, for a status conference on October 9, 2018.[10] Five days later, on September 12, 2018, Tyson's

---

[10] In the interim, Wallace was suspended from the practice of law on June 30, 2015, and disbarred on April 26, 2016, for willfully abandoning a

14

current appellate counsel entered an appearance, and on October 5, 2018, the trial court issued a rule nisi for a hearing on March 5, 2019. Appellate counsel sought and obtained a continuance to complete their investigation, and the hearing was rescheduled for August 26, 2019. Appellate counsel moved, unopposed, for a further continuance due to not having received the rule nisi for the August 26 hearing, and Tyson's motion for new trial was eventually heard on October 28, 2019 and denied on December 31, 2019.

"Substantial delays in the appellate process implicate due process rights, and we review appellate due process claims under the four-factor analysis used for speedy trial claims set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972)." *Veal v. State*, 301 Ga. 161, 167 (3) (800 SE2d 325) (2017). "In assessing a due process claim premised on a post-conviction delay, we generally look at four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to

different client and engaging in dishonesty or misrepresentation. See *In the Matter of Wallace*, 299 Ga. 3 (785 SE2d 534) (2016).

15

the defendant." (Citations, punctuation, and footnote omitted).

*Dawson v. State*, 308 Ga. 613, 623 (4) (842 SE2d 875) (2020).

"Importantly, we have repeatedly found . . . the failure to make this showing of prejudice in an appellate delay claim to be fatal to the claim, even when the other three factors weigh in the appellant's favor." (Citations and punctuation omitted.) Id. Here, the record demonstrates that Tyson has failed to show prejudice.

> The prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing.

(Citations and punctuation omitted.) *Loadholt v. State*, 286 Ga. 402, 406 (4) (687 SE2d 824) (2010). And "in determining whether an appellate delay violates due process, prejudice, unlike in the speedy trial context, is not presumed but must be shown." (Citations and punctuation omitted.) *Glover v. State*, 291 Ga. 152, 155 (3) (728 SE2d 221) (2012).

Tyson's claims of prejudice lack merit. With respect to the issue

16

of the conduct of voir dire, Tyson claims this information is unavailable due to the death of the original trial judge and the court reporter. But Tyson has not shown prejudice because witnesses were available at the time of the hearing on his motion for new trial, including Tyson's trial counsel and the juror in question, to provide testimony from which the trial court could determine what occurred during the questioning of that juror. See Division 1, above. With respect to Tyson's claim that the delay made it impossible for him to determine whether his trial counsel should have obtained Bradley's cell phone records, Tyson did not question trial counsel regarding this issue at the hearing on his motion for new trial. Moreover, at that hearing, the trial court excluded from evidence a copy of unspecified cell phone records tendered by Tyson because they did not include an affidavit showing the evidentiary foundation for the introduction of a business record, as required by OCGA § 24-8-803 (6), and the contents of that excluded material are unknown. It was Tyson's burden to demonstrate the significance of these records and any prejudice flowing therefrom on his motion for new trial. He has

17

failed to do so.

Finally, Tyson contends that because a deputy sheriff has died, he cannot question him regarding whether he brought Tyson into the courtroom in shackles while the jury was present. But Tyson never questioned his trial counsel, the juror, or any other witness or observer regarding this matter. Moreover, Tyson himself did not testify to being shackled or offer any other evidence that he was in fact shackled in the courtroom. Any such assertion therefore amounts to speculation, and Tyson has failed to demonstrate any prejudice. See *Morris*, 308 Ga. at 526 (2) ("mere speculation that inaccuracies or omissions exist" insufficient to establish prejudice). Even assuming that the other three factors all weigh in Tyson's favor, in the absence of any showing of prejudice his claim is without merit. See *Dawson,* 308 Ga. at 623 (4).

4. Acknowledging that the plain error standard of OCGA § 17-8-58 (b) applies because he raised no objection to the jury instruction at trial, Tyson contends that the trial court committed plain error by instructing the jury that it "should consider with great

care and caution the evidence of any statement made by the Defendant."[11] He contends that this instruction was incompatible with another portion of the charge, which he requested, instructing the jury that it "should settle [any] conflict [in the evidence], if you can, without believing that any witness made a false statement,"[12] because the instruction effectively told the jury that Tyson's statement was to be given less weight than the statements of other witnesses, such as Bradley, and the jury therefore was instructed to believe Bradley over Tyson.

The four elements of plain error are that the error not be

---

[11] This instruction stated in full:
You should consider with great care and caution the evidence of any statement made by the Defendant. The Jury may believe any statement in whole or in part, believing that which you find to be true and rejecting that which you find to be untrue. Upon you alone rests the duty to apply the general rules for testing the believability of witnesses, and to decide what weight should be given to all or any part of such evidence.
[12] This instruction stated in full:
When you consider the evidence in this case if you find a conflict, you should settle this conflict, if you can, without believing that any witness made a false statement. If you cannot do so, then you believe that witness or those witnesses whom you think are best entitled to belief. You must determine what testimony you will believe and what testimony you will not believe.

affirmatively waived, that it be clear and not open to reasonable dispute, that it likely affected the outcome of the proceedings, and, finally, that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." (Citations and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Here, Tyson has failed to demonstrate that the alleged error was clear and not open to reasonable dispute.

In *Holmes v. State*, 311 Ga. 698, 702 (2) (859 SE2d 475) (2021), we concluded that a "great care and caution" instruction with respect to a defendant's out-of-court statements was not clear error, noting that

> because the charge was given immediately after instructions about evaluating whether the defendant's custodial statements were made voluntarily and with full knowledge of his constitutional rights, a reasonable jury would likely have understood the charge to encourage skepticism only of [appellant's] custodial statements.

(Citation omitted.) Id. Here, the charge complained of was part of a much longer instruction informing the jury that "a statement that a Defendant allegedly made at the arrest" could not be considered "for

20

any purpose" until the jury determined that Tyson was informed of his constitutional rights and that his statement was clearly voluntary, noting that the burden of proof was on the State to establish these facts. Immediately before the charge complained of, the trial court instructed the jury, "If you fail to find any one of the conditions that I have just described, you must disregard the statement entirely and give it no consideration in reaching your verdict." The trial court further instructed the jury that it was authorized to believe the statement in whole or in part and to "apply the general rules for testing the believability of witnesses."

> Considering the instructions in context, see *Campbell v. State*, 292 Ga. 766, 769 (3) (740 SE2d 115) (2013), a reasonable jury would not have understood the instruction to mean that it should be more skeptical of [Tyson's] . . . exculpatory statements than testimony of other witnesses.

(Citation omitted.) *Holmes*, 311 Ga. at 702 (2). Particularly in light of the context in which the complained-of instruction was given, Tyson has failed to demonstrate plain error.

5. Tyson contends that the trial court erred, both at trial and

at the hearing on his motion for new trial, in excluding on the ground

of hearsay part of the testimony of his trial witness, Roberts.[13] For

the reasons explained below, we affirm the trial court's decision,

although we do so on a different ground than that relied upon by the

trial court. See *State v. Mondor*, 306 Ga. 338, 345 (2) (830 SE2d 206)

(2019) (affirming trial court's exclusion of evidence under right-for-

any-reason rule); *Drews v. State*, 303 Ga. 441, 448 (3) (810 SE2d 502)

(2018) (we need not "explore existential questions" of admissibility

when evidence is inadmissible for another reason). Here, regardless

of whether the excluded testimony was hearsay, the trial court did

not abuse its discretion by excluding it.

It is well established that

a criminal defendant is entitled to introduce relevant and admissible evidence implicating another person in the commission of the crime or crimes for which the defendant is being tried. However, the proffered evidence must raise

---

[13] As noted above in connection with the testimony at trial, Roberts testified to her observations of Bradley's interaction with Bradley's niece, stating her opinion that Bradley was indifferent to the child's safety and behaved inappropriately, "tormenting" and teasing the child in a manner that was embarrassing, frightening, and inconsistent with her work as a medical caregiver. Tyson complains, however, that the witness was not permitted to testify about Bradley's exact words at the time.

a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature. *Evidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another, is not admissible.*

(Citations and punctuation omitted; emphasis supplied.) *Heard v. State*, 295 Ga. 559, 567-568 (4) (761 SE2d 314) (2014). See also *Griffin v. State*, 311 Ga. 579, 586 (5) (858 SE2d 688) (2021).

Here, Tyson was able to introduce at trial, and at the hearing on the motion for new trial, a significant amount of testimony regarding Bradley's treatment of her niece, so that any testimony by the witness regarding the exact words used by Bradley would have been largely cumulative.[14] More importantly, Tyson acknowledged to the police that Kei'Mariona was in his sole care throughout the day while Bradley was at work and that no one else was at the

---

[14] At the hearing on Tyson's motion for new trial, Roberts testified again about Bradley's conduct, as well as about additional statements Bradley made at the time. Only thereafter was an objection raised and sustained that Bradley's conduct with someone other than the victim was irrelevant. In his motion for new trial, as he does here, Tyson relied primarily upon *Gilreath v. State*, 298 Ga. 670, 674 (2) (784 SE2d 388) (2016), but as discussed below, that decision is inapposite.

apartment that day. And no evidence was presented at trial that Bradley had access to Kei'Mariona during the hours preceding the child's injuries, which because of their severity would have produced immediate effects. In the absence of evidence that Bradley was present at the apartment during this time, "the proffered evidence does not raise a reasonable inference of [Tyson]'s innocence," and the trial court did not abuse its discretion in excluding it. *De La Cruz v. State*, 303 Ga. 24, 27-28 (3) (810 SE2d 84) (2018).

In *De La Cruz*, we found that the evidence presented "merely cast[] a bare suspicion" on a proposed perpetrator because it showed no direct connection with the corpus delicti and there was no evidence that the individual was at the scene of the crime on the night of the murder. Id. at 28 (3). And in *De La Cruz*, we further contrasted those facts with *Gilreath v. State*, 298 Ga. 670 (784 SE2d 388) (2016), also cited by Tyson, in which the evidence raised a reasonable inference of innocence and the person in question was connected with the corpus delicti as the only other individual with access to the child during the time that the fatal injuries were

24

inflicted. See id. at 674 (2); *De La Cruz*, 303 Ga. at 28 (3). Here, as in *De La Cruz*, no evidence presented by Tyson suggested that Bradley had any opportunity to inflict the child's severe injuries during the time in question.[15] See *Whitaker v. State*, 291 Ga. 139, 143-144 (3) (728 SE2d 209) (2012) ("[A]s to failing to call certain witnesses, any evidence that the mother abused the child in the past would have been irrelevant because the injuries were acute and Appellant was the only adult present during the time these injuries were administered."). This enumeration is without merit.

6. Tyson asserts that his trial counsel provided constitutionally

---

[15] In his reply brief, Tyson contends for the first time that he did not have Kei'Mariona under direct observation at all times during the day, particularly while the child was upstairs as he was watching TV and putting items away. Tyson suggests, in effect, that Bradley could have come home from work, entered the apartment without Tyson's knowledge, gone upstairs, fatally injured the child, and left the apartment, again without his knowledge. But Tyson also told police that he repeatedly saw the child as he was walking upstairs and past her bedroom while putting things away. Moreover, he told police that while he was running errands with the child, he got a car seat out of Bradley's car at work, that on his way back to the house with the child he met Bradley pulling out of the post office returning to work, and that he called Bradley at work when he discovered the child was not breathing. In support of the defense theory that Bradley injured the child, trial counsel closely questioned a GBI agent as to why he had not investigated Bradley more thoroughly, and the agent pointed to Tyson's and Bradley's consistent statements showing that Bradley was at work at the relevant times.

ineffective assistance at trial. To prevail on a claim of ineffective assistance, Tyson must prove both that the performance of his lawyer was constitutionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, he must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." (Citation omitted.) *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). This requires a defendant to "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." (Citation and punctuation omitted.) *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015). And to prove prejudice, Tyson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

26

undermine confidence in the outcome." *Strickland*, 466 U. S. at 694

(III) (B). "If either *Strickland* prong is not met, this Court need not

examine the other prong." *Palmer v. State*, 303 Ga. 810, 816 (IV)

(814 SE2d 718) (2018). For the reasons stated below, we conclude

that Tyson's counsel did not render ineffective assistance.

(a) Tyson asserts that his trial counsel was constitutionally

deficient in "failing to explore" the alleged bias of the juror who

worked at Bradley's place of employment or to "have him excused

for cause." See *Veal*, 301 Ga. at 163 (2). We conclude that Tyson has

failed to make the required showing under *Strickland*.

> As we observed in *Veal*,
>
> we have long ruled that a juror's knowledge of, or non-
> familial relationship with, a party is not a per se
> disqualification. Instead, a juror's knowledge of, or non-
> familial relationship with, a witness, attorney, or party
> provides a basis for disqualification only if it is shown that
> it has resulted in the juror having a fixed opinion of the
> accused's guilt or innocence or a bias for or against the
> accused.

(Citations and punctuation omitted.) *Veal*, 301 Ga. at 164 (2) (a).

And Tyson has the burden of overcoming the presumption that any

27

potential juror was impartial. See id. at 165 (2) (b).

At the hearing on Tyson's motion for new trial, the juror testified that he had not formed any opinion as to Tyson's guilt and that he had no bias or prejudice, and that he had testified to that effect during voir dire. Tyson "offered no reason to discredit those responses," and as a result, no basis was shown to excuse the juror for cause and Tyson has failed to demonstrate that his trial counsel was constitutionally deficient in failing to make a meritless motion. Id.[16]

Moreover, even if we assume that counsel was deficient in "failing to explore" the alleged bias of the juror or to "have him excused for cause," as Tyson alleges, Tyson has failed to show

---

[16] In his reply brief, Tyson argues that even though the juror "may have answered truthfully during voir dire that he had not formed an opinion about Mr. Tyson's guilt, that was *before* he knew that the defense was going to be" that Bradley killed the child. Tyson contends the juror demonstrated that he was biased in favor of Bradley because, at the hearing on Tyson's motion for new trial hearing, he responded affirmatively to appellate counsel's questions as to whether Bradley was good at her job and whether he would consider her trustworthy and a good caregiver. This, Tyson argues, shows that the juror was biased. But even assuming that the juror had formed this opinion 11 years earlier, before he became the administrator of the nursing home and thus privy to Bradley's work record, it is not dispositive of whether trial counsel was ineffective.

prejudice because no evidence was ever presented that the juror was in fact biased. See *Cade,* 289 Ga. 805, 809 (4) (716 SE2d 196) (2011); see also *Simpson v. State*, 298 Ga. 314, 319 (4) (781 SE2d 762) (2016) (appellant did not demonstrate that juror was not qualified or "harbored any prejudice toward [appellant] or was disinclined to acquit him based on reasons other than the arguments and evidence presented at trial," and therefore failed to affirmatively show that he was prejudiced by trial counsel's failure to use a peremptory strike on juror).

(b) Citing two decisions of our Court of Appeals criticizing the "great care and caution" jury instruction given by the trial court here,[17] Tyson asserts that his trial counsel was ineffective in failing to object to that instruction. But those decisions were issued after Tyson's trial in May 2008. See *Pincherli v. State*, 295 Ga. App. 408 (671 SE2d 891) (2008) (decided December 31, 2008); *McKenzie v. State*, 293 Ga. App. 350 (667 SE2d 142) (2008) (decided August 21,

---

[17] Tyson's assertion of plain error with respect to this jury instruction is rejected in Division 4.

2008).

> [I]n making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law, and only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law. Although this Court has held that a new decision applies to the admission of evidence in cases pending on direct review at the time that opinion was issued, that does not alter the long-standing precedent that, when addressing a claim of ineffectiveness of counsel, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial. Thus, a new decision does not apply in a manner that would require counsel to argue beyond existing precedent and anticipate the substance of the opinion before it was issued.

(Citations and punctuation omitted.) *Reed v. State*, 307 Ga. 527, 534-535 (2) (b) (837 SE2d 272) (2019). Trial counsel therefore was not deficient in not objecting to the instruction. See id.

(c) Tyson contends that his trial counsel was ineffective in failing to object on the basis of improper character evidence when a witness mentioned that Tyson owned a gun and another witness testified that she knew Bradley from church. But even "evidence that [a defendant] owned and frequently carried a pistol does not impute to him generally bad character." (Citation omitted.)

30

*Marshall*, 297 Ga. at 449 (2) (b). And testimony was elicited that Tyson also attended the church in question, and that church members supported both Tyson and Bradley after Kei'Mariona's death. Moreover, trial counsel testified that "when something like that comes out you have to make a decision am I going to object and ring the bell, alert the jury, that I don't like it," and that unless such testimony was "outcome determinative," his general practice was not to object. "The matter of when and how to raise objections is generally a matter of trial strategy." (Citations and punctuation omitted.) *Snipes v. State*, 309 Ga. 785, 792 (3) (b) (i) (848 SE2d 417) (2020). We cannot say that trial counsel's decision to forego an objection to this testimony "was so patently unreasonable that no competent lawyer would have made the same decision." (Citations omitted.) Id.

(d) Tyson further contends his trial counsel was ineffective in failing to object or request a curative instruction after testimony from a witness who lived in a neighboring apartment and observed Tyson come out of the apartment holding Kei'Mariona. The witness,

who worked at the local hospital, asked Tyson if there was "something wrong with the baby," and took the baby from him to try to revive her. Asked what Tyson did when she took the baby, she responded, "He stepped back towards the door; he wasn't upset or anything, you know. With a baby like that I would have thought he would be upset, but then the ambulance got there."[18] Tyson asserts that trial counsel's failure to object was deficient, but "[t]he mere fact that present counsel would have pursued a different strategy does not render trial counsel's strategy unreasonable." (Citation and punctuation omitted.) *Stanley v. State*, 283 Ga. 36, 41 (2) (c) (656 SE2d 806) (2008). Trial counsel testified at the hearing on Tyson's motion for new trial that whether or not to object to this testimony was "a difficult choice," but that he concluded that he did not want to "ring the bell" or "highlight[] to the jury that I don't want the information considered" and therefore "kept [his] seat." This was not

---

[18] Counsel had made an earlier motion in limine, before the first witness was called, with respect to any testimony regarding Tyson's demeanor. The trial court indicated that it would limit any testimony to what the witnesses observed, but would not allow testimony on "whether or not it was normal for [Tyson]."

a patently unreasonable decision. See *Snipes*, 309 Ga. at 792 (3) (b).

(e) Tyson contends that his trial counsel should have requested a mistrial and that the trial court should have granted it when the trial court improperly inquired about a battery instruction in the presence of the jury.[19] The transcript, however, does not reflect any inquiry on the part of the trial court. Rather, as the trial court was nearing the end of its instructions to the jury, it informed the jury that a verdict form had been prepared, and described the contents of that form to the jury. As the trial judge began to describe Count 2 and Count 3, he stopped and then stated, "Counsel approach."[20]

---

[19] Any argument that the trial court erred in not granting a mistrial was waived for appellate review. "If the defendant did not make a contemporaneous motion for a mistrial at the time the defendant became aware of the matter giving rise to the motion, then the defendant has waived review of this issue on appeal." (Citations and punctuation omitted.) *Thomas v. State*, 310 Ga. 579, 581 (2) (853 SE2d 111) (2020). And a sua sponte mistrial was not demanded here. "There is no evidence that the jurors heard the substance of the sidebar conversation. Consequently, the circumstances fall far short of demonstrating the manifest necessity for the trial court to [sua sponte] declare a mistrial." (Citations and punctuation omitted.) *Atkinson v. State*, 301 Ga. 518, 524 (5) (801 SE2d 833) (2017).

[20] The verdict form from which the trial court was reading shows, under "Count 3, Cruelty to a Child in the first degree," an option for a finding of guilty or not guilty of the "Lesser offense of battery."

Thereafter, the transcript indicates that a discussion took place "at bench outside hearing of jury" regarding whether Tyson had requested an instruction on battery as a lesser included offense of Count 3, cruelty to a child, and Tyson's counsel indicated that he was "not sure."[21] After some discussion regarding that and other matters in the jury instructions, a copy of the battery instruction was found, and the instructions resumed "back in hearing of jury" with the giving of the requested instruction. The trial court then asked, "Is that sufficient, gentlemen?" and both counsel responded, "Yes, sir."

Here, the transcript does not show that the trial court made any verbal inquiry in the hearing of the jury. But Tyson asserts that, in the period of time between the trial court's instruction to the jury regarding the verdict form and the direction for counsel to approach the bench, what could be described as a non-verbal exchange took place. He further asserts that this was witnessed by the jury before

---

[21] The record reflects that Tyson had filed a written request to charge on battery.

the trial court instructed counsel to approach, and that it was prejudicial to him. At the hearing on Tyson's motion for new trial, trial counsel testified that he thought the judge was "looking at" him in a way that he believed indicated to the jury that the judge was asking whether the defense wanted the battery charge included. Trial counsel testified that he therefore "tried to play it off like, oh maybe it was [the prosecutor's] request, and maybe can we approach" in order to get a bench conference.[22]

At the hearing on the motion for new trial, Tyson's trial counsel testified repeatedly regarding his reasons for not seeking a mistrial. His primary concern was that a retrial would give the State the

---

[22] At trial, in response to the trial court's request for any objections at the conclusion of the jury instructions, trial counsel responded in part, "I do not think it was a reasonable approach to ask me in . . . front of the jury whether or not I had requested a charge on battery." A discussion ensued, in which the trial court noted, "I don't think I asked you about that. I think I asked you was there a charge on battery," and trial counsel responded, "Yes sir." The prosecutor added, "You asked if one was submitted." Asked if he had "anything else," trial counsel responded, "No sir." To the extent this amounted to an objection to the trial court's earlier question or conduct, however, it was not contemporaneous. See *Wilson v. State*, 268 Ga. 527, 529-530 (5) (491 SE2d 47) (1997) (appellant waived right to assert claim under OCGA § 17-8-57 regarding trial court's remark to jury "because he did not contemporaneously object or move for a mistrial on that ground." (Citation omitted.)).

opportunity to investigate Bradley more thoroughly and eliminate the opportunity for counsel to argue that Bradley was the actual perpetrator: "It was the last thing I wanted. We had shown our hand. And the state would have corrected the errors that they made in not investigating [Bradley] on the first instance."

This was a reasonable strategic choice, so Tyson has not shown that the decision not to move for a mistrial was constitutionally deficient. See *Cox v. State*, 306 Ga. 736, 742-743 (2) (d) (832 SE2d 354) (2019) (reasonable strategic choice not to move for mistrial when counsel did not want to draw attention to allegedly improper argument and "thought we were in a decent position at that point in time."). See also *State v. Goff*, 308 Ga. 330, 335 (2) (840 SE2d 359) (2020) (reversing trial court's conclusion that trial counsel was ineffective in failing to seek a mistrial when trial counsel testified he did not want a mistrial because he thought "'we had a pretty good jury and a pretty good trial going'" and holding that "we cannot say that trial counsel's assessment was objectively unreasonable"); *McClendon v. State*, 299 Ga. 611, 614 (2) (791 SE2d 69) (2016) (trial

36

counsel's strategic decision not to seek mistrial not objectively unreasonable when he believed that cross-examination of State's key witness would be less effective on retrial).

(f) With respect to the exclusion of a portion of his witness Roberts' testimony regarding the exact words Bradley had used in teasing her niece, Tyson asserts that his trial counsel "should have done more, or insisted on making a proffer" of the excluded testimony. But, as noted in Division 5, above, the limited proffer made at the hearing on Tyson's motion for new trial shows that the trial court did not abuse its discretion in excluding this testimony, and trial counsel was not deficient in failing to pursue a meritless course of action. See *Carter v. State*, 310 Ga. 559, 564 (2) (a) (852 SE2d 542) (2020); see also *Johnson v. State*, 310 Ga. 685, 691-692 (3) (853 SE2d 635) (2021) (counsel not ineffective in failing to make meritless motion or objection).

7. In two enumerations of error, Tyson asserts that the cumulative effect of his trial counsel's errors and the cumulative effect of the trial court's errors and deficient performance by his trial

37

counsel require a new trial. But here, we have assumed deficiency with respect to only one alleged instance of ineffective assistance of trial counsel, concluding that Tyson was not prejudiced thereby, and we have identified no trial court error. There are accordingly no multiple errors from which to assess any cumulative harm. See *Cox*, 306 Ga. at 743 (2) (e) ("[W]e evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." (Citation and punctuation omitted.)).

*Judgment affirmed. All the Justices concur.*