**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2024**

# In the Court of Appeals of Georgia

A24A0483. ARROYO v. THE STATE.

LAND, Judge.

After a jury trial, Keiver Rivas Arroyo was found guilty of rape. His motion for new trial was denied, and he appeals, arguing that the trial court erred in instructing the jury, that the evidence against him was insufficient, and that trial counsel was ineffective. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LEd2d 560) (1979).

So viewed, the record shows that on May 18, 2019, the victim, a 19-year-old college student, joined her friends at a house party in Savannah. According to the victim, she drank between two to four cups of vodka while at the house party, and her last memory of the evening was sitting on her friend's porch.

The victim and her friends left the house party and went to a club. While at the club, the victim approached Arroyo[1] and his friends and invited them to talk and dance. The victim and Arroyo danced and kissed, and then the two left the club. Arroyo drove the victim to a gas station, where they purchased water and condoms. Arroyo then drove to a hotel. While on the way to the hotel, Arroyo was stopped for speeding by Garden City police. The victim was asleep during the traffic stop.

Arroyo and the victim arrived at the hotel at approximately 3:00 a. m. Arroyo went inside by himself, paid for a hotel room with his credit card, and left his phone number with the hotel clerk. Arroyo then returned to his car and brought the victim

[1] At the time of the offenses, Arroyo was 20 years old. He testified that he did not drink that night.

2

inside the hotel. Surveillance footage from the hotel shows the victim walking unsteadily in the hotel parking lot. The hotel clerk testified that Arroyo reentered the hotel lobby while holding hands with the victim, who "looked like she was possibly drunk" because "she was not walking real straight."

Arroyo testified that, once inside the hotel room, the victim first wanted to "have relations, but, then, she wanted to sleep" and that he offered to leave but that the victim asked him to stay. While in bed, Arroyo took several "live" photos of himself with the victim partially undressed in the background. Her face is not visible in the photos, and she is lying on the bed. According to Arroyo, he asked the victim multiple times if she was "sure" she wanted to have sex. Arroyo testified that he then attempted to penetrate the victim twice but stopped when she said it hurt. Arroyo testified that there was blood and that he helped the victim into the bathroom to clean up and take a shower. The victim and Arroyo left the hotel at approximately 4:50 a. m. A still photo from the hotel's surveillance footage shows the victim walking unassisted through the lobby.

The hotel clerk testified that although "it didn't look like there was anything wrong," she also thought the couple's brief stay was "strange." The hotel clerk went

up to the hotel room to look for damage, where she found blood on the sheets and comforter and three "used condoms" on the floor. The hotel clerk took a video of the room, which was played for the jury.[2]

Arroyo testified that, after leaving the hotel, the victim fell asleep while he drove her back to her dorm. When Arroyo arrived at the victim's dorm, he was greeted by a security guard. When the victim would not wake up, the security guard called EMS "for them to make a medical evaluation." Arroyo stayed with the victim until EMS arrived. The victim remained unconscious despite efforts from EMS, and she was transported to the hospital at approximately 5:25 a. m. on May 19 to be treated for acute alcohol intoxication. She was discharged from the hospital at 9:15 that same morning.

The victim testified that she has no memory of the evening between sitting on the porch at her friend's house and waking up at the hospital. After noticing blood when urinating, the victim returned to the hospital's emergency department at approximately 5:41 p. m. on the evening following the incident and requested

---

[2] The hotel clerk testified that she did not call the police because it appeared that Arroyo and the victim were "just on a date, and maybe she was on her period or something."

pregnancy and STD testing. The victim declined a rape exam. She was diagnosed with a urinary tract infection and discharged from the hospital for the second time at approximately 8:20 p. m. on May 19.

Later that evening, the victim received a call from Arroyo. The victim did not want to talk with Arroyo on the phone, so the two exchanged text messages. Arroyo asked the victim how she was doing. The victim told Arroyo that she did not "remember anything" and asked him repeatedly whether they had sex. Arroyo told the victim that they "tried, but nothing happened" and that the victim had consented. The victim again asked whether they had sex, stating that she "need[ed] to know" because she was a virgin. The victim then told Arroyo that he raped her.

After exchanging text messages with Arroyo, the victim told a SCAD security guard that she had been "possibly[] raped" and called 911 at the security guard's direction. A sexual assault nurse examiner ("SANE") was not available, so the next morning, the victim went to a different hospital for a rape examination. While waiting for the SANE, the victim met with a Savannah Police Department SVU detective. The victim told the detective that she did not remember anything that had happened between attending a party on the evening of May 18 and waking up at the hospital the

5

next morning. The victim provided the detective with Arroyo's name and contact information.

A SANE then interviewed the victim, who told her that she did not recall any part of the event. The SANE then took photos of the victim and examined her.[3] The victim had a circular burn on her right palm and abrasions and bruising on her lower legs. An internal exam revealed that the victim had three "internal vaginal injuries," including an abrasion "very common . . . after intercourse or a sexual assault," and bruising and a blood clot on her hymen. The SANE was unable to fully examine the victim's cervix, however, because the victim could not tolerate a speculum exam. As to the victim's injuries, the SANE testified that although "[y]ou don't always have to have injury for a sexual assault[,] [t]he latest literature tells you that two or more injuries is consistent with a sexual assault." When asked whether the victim's injuries were consistent with sexual assault, the SANE stated that the injuries were "consistent with [the victim's] story." On cross-examination, the SANE nurse admitted that she could not date the age of any bruises and that the victim's bleeding

---

[3] While at the hospital on May 20, the victim received a toxicology exam which was negative for drugs and/or alcohol. It does not appear from the record that a toxicology exam was given during either of the victim's hospital visits on May 19.

could be caused by a UTI. The SANE also admitted that the victim's internal abrasions could be the result of consensual intercourse and that she could not determine from her examination whether the sex between Arroyo and the victim was nonconsensual.

At the detective's suggestion, the victim texted Arroyo again, asking to speak with him over the phone. The victim then conducted a recorded call with Arroyo in the detective's presence. Both the victim and Arroyo spoke in Spanish during the call, which was later orally translated by another detective.[4] The victim testified that, during the call, Arroyo told her that she was "acting really sleepy," that he took her to a hotel, and that she asked him to have sex with her. Arroyo told the victim that when they tried to have sex, "he stopped because he saw the blood" and because the victim was making "weird movements . . . somewhat like seizures." Arroyo told the victim that he helped her "clean up" before taking her back to her dorm.

On June 18, 2019, a detective with the Pooler police department interviewed Arroyo with the assistance of an interpreter. Arroyo was provided with *Miranda*[5]

---

[4] A video of the detective's translation of the call was played for the jury.

[5] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

warnings prior to the interview and signed a *Miranda* waiver.[6] A video recording of Arroyo's interview was played for the jury. During the interview, Arroyo told the detective that he met the victim at a club and that the victim was "participating" while they had sex. At the end of the interview, Arroyo was arrested and charged with rape.

A jury found Arroyo guilty of rape, and he was sentenced to life with 25 years to serve in prison. Arroyo filed a motion for new trial, and after a hearing, the trial court denied the motion as amended. This appeal followed.

1. Arroyo argues that it was plain error for the trial court to instruct the jury that they could find force and lack of consent if the victim was intoxicated. Arroyo argues that this jury instruction was erroneous because the State was required to prove that the sexual intercourse between Arroyo and the victim was done both "forcibly" and "against her will" in order to convict him of rape. For the reasons discussed below, we find no plain error.

---

[6] The detective testified that he provided Arroyo with *Miranda* warnings even though he was not in custody during the interview.

As Arroyo concedes, he did not object to the charge at trial and we therefore review this claim only for plain error. See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012). Under plain error review,

> [r]eversal is authorized if all four prongs of the standard adopted in [*State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011),] are met: the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. "An appellant must establish all four elements of the test in order to demonstrate plain error, so satisfying this test is difficult, as it should be." (Citation and punctuation omitted.) *Walker v. State*, 311 Ga. 719, 724 (3) (859 SE2d 25) (2021).

Georgia's rape statute states, in pertinent part, that a person commits the offense of rape "when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" OCGA § 16-6-1 (a). The statute, by its plain language, requires the State to prove three elements: "(1) carnal knowledge of a female;[7] (2) forcibly; and (3) against her will." *Collins v. State*, 229 Ga. App. 658, 658 (1) (a) (495 SE2d 59) (1997). "The terms 'forcibly' and 'against her will' are two separate elements of proving

---

[7] "Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a).

rape. The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation." (Citation and punctuation omitted.) *Kim v. State*, 366 Ga. App. 516, 517 (1) (a) (883 SE2d 536) (2023). "[F]orce may be proved by direct or circumstantial evidence." (Citation and punctuation omitted.) Id.

However, in certain sexual abuse cases involving a victim who is intoxicated, even where such intoxication was voluntary,[8] Georgia courts have allowed "evidence of a victim's inability to give consent [to] be used to impute the element of force." (Citation and punctuation omitted.) *Kim v. State*, 366 Ga. App. at 517 (1) (b). This "doctrine of 'constructive force' . . . reduces the amount of force required to show forcible rape in situations where a victim is physically or mentally unable to give consent because she is intoxicated or asleep." (Citation and punctuation omitted.) *Wright v. State*, 365 Ga. App. 288, 293 (1) (d) (878 SE2d 137) (2022). Accordingly, although the requirement of force generally refers to "the force used to overcome the resistance of the female, . . . when the victim is physically or mentally unable to give

---

[8] "[A]lthough a majority of states do not criminalize conduct when a victim has become voluntarily intoxicated by drugs or alcohol, Georgia is not such a state." (Citation and punctuation omitted; emphasis in original.) *Handley v. State*, 352 Ga. App. 106, 108 (834 SE2d 114) (2019).

consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force . . . becomes the use of such force as is necessary to effect the penetration made by the defendant." (Citation and punctuation omitted.) Id.

Arroyo relies on the Supreme Court of Georgia's opinion in *Drake v. State*, 239 Ga. 232 (236 SE2d 748) (1977), to argue that the State must still prove that Arroyo intended to use force if the victim resisted. This reliance is misplaced. In *Drake*, a case involving the rape of a child, our Supreme Court distinguished statutory rape from common-law rape. See *Drake*, 239 Ga. at 234 (superseded by statute on other grounds) ("Considerations of 'consent' and 'force' and 'against her will' are irrelevant in a statutory rape case, and the age of the victim is irrelevant in a forcible rape case except insofar as it may show her incapable of giving consent and thereby supply the 'against her will' element. Force must also be shown, of course.") In so doing, the Court explained that

> [i]t is true that sometimes mere lack of consent imputes force, but this is true only where children are not involved. . . . When the victim is physically or mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force is found in constructive force, that is, in the use of such force as is necessary to effect the penetration made by the defendant. The intent to

11

use force, however, in case fraud or stupefaction should fail, is essential to the offense. In any case, actual application of force is not required.

*Drake v. State*, 239 Ga. 232, 234-235 (236 SE2d 748) (1977) (quoting 1 Wharton, Criminal Law and Procedure § 307 (1957)). In other words, "[t]he Supreme Court in *Drake* makes it plain that [constructive force] applies only where . . . a female of legal age is unable to consent because she is intoxicated, drugged, or mentally incompetent." (Citations and punctuation omitted.) *Collins v. State*, 229 Ga. App. 658, 659 (495 SE2d 59) (1997). This Court has "consistently relied upon this language [regarding intoxication and constructive force] . . . and it has never been disapproved of or otherwise overruled by our Supreme Court." *Johnson v. State*, 351 Ga. App. 690, 694 n.13 (832 SE2d 676) (2019). See also *Melton v. State*, 282 Ga. App. 685, 692 (639 SE2d 411) (2006). ("[W]ithout a rule allowing a finding of constructive force based upon penile penetration, a defendant who had sexual intercourse with a victim who was mentally incompetent or severely intoxicated could avoid a criminal conviction [for rape] as long as he did not use actual force to accomplish the intercourse.")

In this case, the trial court provided the following instruction to the jury:

If you find that the alleged victim was not mentally capable of exercising judgment or of expressing intelligent consent or objection to the act of

12

intercourse, then you would be authorized to find the Defendant guilty of rape. In that regard, you may consider whether the alleged's victim's ability to consent is temporarily lost from intoxication or unconsciousness. In the context of forcible rape, when the State has proven beyond a reasonable doubt that the victim is physically or mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force is found and [sic] the use of such force as is necessary to effect penetration made by the Defendant. If the State fails to prove any of these elements beyond a reasonable doubt, you must acquit.[9]

Because the trial court's charge on constructive force sets forth a correct statement of law that is consistent with years of precedent from this Court and our Supreme Court, Arroyo has not shown that the trial court's instruction was an obvious error beyond reasonable dispute and his claim of plain error therefore fails. See *Bryant v. State*, 354 Ga. App. 603, 607-608 (3) (839 SE2d 680) (2020) (trial court did not plainly err in instructing jury that "[s]exual intercourse with a woman whose

---

[9] Although "[t]rial courts are not legally bound to use the exact language in Georgia's *suggested* pattern jury instructions when charging a jury," *White v. Stanley*, 369 Ga. App. 330, 333 n. 11 (893 SE2d 466) (2023), we note that Georgia Suggested Pattern Jury Instruction 2.30.15 states that "[t]he State must prove that the alleged victim did not consent to the sexual intercourse. If you find that the victim was not mentally or physically capable of consenting to the sexual act alleged, then you would be authorized to find the Defendant guilty of rape."

will is temporarily lost from intoxication or unconscious arising from use of such or other causes or even sleep is not consensual").

2. Arroyo argues that the evidence was insufficient to support his conviction. Based on the evidence in this record, we disagree.

"Conflicts in the testimony of witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve," (Punctuation and footnote omitted) *Williams v. State*, 326 Ga. App. 665, 666 (1) (757 SE2d 267) (2014), and it is not our place on appeal to "weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Anderson v. State*, 338 Ga. App. 802, 802 (792 SE2d 92) (2016). "We do not speculate which evidence the jury chose to believe or disbelieve" and where "there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, we must uphold the jury's verdict." (Footnotes and punctuation omitted.) *Segel v. State*, 293 Ga. App. 506, 507 (1) (a) (667 SE2d 670) (2008).

As explained in Division 1, Georgia law recognizes the doctrine of constructive force, which reduces the amount of force that the State is required to show in situations where a victim is intoxicated to the point of being unable to consent to

sexual intercourse. Where the victim is intoxicated to this extent, a jury question exists on the second and third elements of rape, specifically the requirement that the penetration of the female sex organ by the male sex organ be done "forcibly" and "against her will." Arroyo argues that this well-accepted legal principle is contrary to the terms of the rape statute and is unjust because it is tantamount to criminalizing sexual intercourse between consenting adults where the alleged female victim happens to be under the influence of alcohol. In the words of defense counsel, "drunk sex" is not rape, and that is all that is present here. While this argument could carry the day for the defense in the right case, it does not survive careful analysis in this case.

We agree that evidence of a victim's mere intoxication, standing alone, is insufficient evidence of an individual's incapacity to consent and is therefore not enough to constitute "constructive force" under the rape statute. If mere intoxication of the alleged victim is all the evidence the State has on the question of force and inability to consent, it is not enough. However, under the circumstances of this case, there is more than mere intoxication. There is evidence of extreme intoxication from which a jury could infer an incapacity to consent. Specifically, the evidence shows that the victim drank heavily prior to the incident at the hotel and became highly

intoxicated as a result. She had no memory of meeting Arroyo, going to the hotel with him, or having sex with him. She was unconscious or asleep at various points during the evening (both before and after the incident at the hotel), and she was taken to the hospital by ambulance for acute alcohol intoxication after being largely unresponsive shortly after the incident. Under these circumstances, we conclude that the evidence constitutes more than "mere intoxication" and was sufficient for the jury to find lack of consent and constructive force based on the victim's heavy intoxication. See *Johnson*, 351 Ga. App. at 694 (evidence sufficient for jury to conclude that victim was intoxicated to the point her will was temporarily lost where "victim vomited, required assistance to walk, and lost consciousness"). For this reason, while we are mindful of the need for courts to proceed with caution where the only evidence of force and an inability to consent is mere intoxication of the victim, we conclude that the evidence here showed much more than mere intoxication and was sufficient to support the verdict.

3. Arroyo argues that trial counsel was ineffective in failing to challenge the testimony by the SANE that two or more injuries is consistent with sexual assault, and in failing to procure a medical expert to rebut that testimony. We disagree.

16

"To prevail on his claim of ineffective assistance of counsel, [Arroyo] must show both that his trial counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different." (Citation and punctuation omitted.) *Stewart v. State*, 311 Ga. 471, 476 (2) (858 SE2d 456) (2021). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation and punctuation omitted). *Debelbot v. State*, 308 Ga. 165, 167 (839 SE2d 513) (2020). "Satisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance." (Citation and punctuation omitted.) *Snipes v. State*, 309 Ga. 785, 790-791 (3) (848 SE2d 417) (2020). "In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one." (Citation and punctuation omitted.) *Stewart*, 311 Ga. at 477 (2). And "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal

conclusions de novo." (Citation and punctuation omitted.) *Woodruff v. State*, 356 Ga. App. 659, 661 (848 SE2d 670) (2020).

(a) Arroyo argues that trial counsel was ineffective for failing to challenge the SANE's testimony that two or more injuries is consistent with sexual assault.

"The extent of cross-examination is a strategic and tactical decision. Decisions about cross-examination do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." (Footnote omitted.) *Rutherford v. State*, 370 Ga. App. 873, 881 (3) (a) (899 SE2d 457) (2024).

At a hearing on Arroyo's motion for new trial, trial counsel testified that she received the SANE report three days before trial, and that if she had more time, she would have wanted to consult with an expert to review the SANE report because she is "not an expert in that field." Trial counsel testified that the SANE was an important witness in the case because she helped the State prove whether there was a lack of consent or whether there was force. However, trial counsel testified that she was "proud" that the SANE admitted on cross-examination that the evidence did not

conclusively prove that there was a rape, and that she "punch[ed] a hole in their case [on] that point."

"Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy," and here, on cross-examination, trial counsel reinforced that the victim's injuries could be the result of consensual intercourse and cast doubt as to the SANE's ability to reach any further conclusions. *Cook v. State*, 338 Ga. App. 489, 495 (790 SE2d 283) (2016). Because Arroyo has failed to show deficient performance, we need not address the prejudice prong. See *Rutherford*, 370 Ga. App. at 881 (3) (a).

(b) Arroyo argues that trial counsel was ineffective in failing to procure a medical expert to rebut the SANE's testimony. Arroyo argues that the State's only evidence of force came from the SANE's testimony and that trial counsel was therefore ineffective in failing to call a rebuttal expert witness because she left "the jury with the opinion that [the SANE] was 'unassailable.'"

When asked whether there was a strategic reason why she did not hire a medical expert to rebut the SANE's testimony, trial counsel testified that she received the SANE report three days before trial, and that if she had more time, she would have

wanted to consult with an expert to review the SANE report because she is "not an expert in that field." Trial counsel admitted, however, that the trial date was set in response to Arroyo's speedy trial demand. She also stated that it was uncommon to hire a SANE expert as a defense expert witness and that she had not previously done so in "this jurisdiction."

Arroyo's counsel also presented testimony from Terri Augspurger at the motion for new trial, who was qualified as a SANE expert and who disputed the testimony of the State's SANE. Augspurger testified that the SANE's testimony at trial that two or more injuries is consistent with sexual assault is "not accurate" and not supported by the literature in this area; that "it is not prudent" for a SANE to testify whether injuries are consistent or inconsistent with sexual assault; and that there were "many discrepancies" in the SANE's examination of victim.

Even assuming that "trial counsel's failure to call an expert witness was deficient performance, we agree with the trial court that [Arroyo] cannot establish that he was prejudiced by the alleged deficiency." *Kirkland v. State*, 334 Ga. App. 26, 36 (5) (c) (778 SE2d 42) (2015). When making this assessment, we must "measure the evidence that should have been – but was not – presented to the jury against the

20

totality of the evidence that was presented." (Citation and punctuation omitted.) *Woods v. State*, 312 Ga. 405 (3) (a) 862 SE2d 526) (2021). "This requires us to consider the strength of the allegedly omitted evidence, its importance in the context of the trial, and the relative strength of the totality of the evidence." Id.

At the motion for new trial hearing, Augspurger pointed to discrepancies in the SANE's testimony at trial about the victim's injuries. But as noted above, trial counsel's cross-examination of the SANE resulted in the SANE's admission that the victim's injuries could be the result of consensual intercourse and cast doubt as to the SANE's ability to reach any further conclusions. And Augspurger's testimony at trial would not have undermined the admissible evidence of the victim's heavy intoxication regardless of any actual force used by Arroyo. Because Arroyo "was required to offer more than mere speculation that the . . . expert testimony would have bolstered his defense at trial," this enumeration fails. (Citation and punctuation omitted.) *Harvard v. State*, 365 Ga. App. 209, 211 (2) (a) (877 SE2d 869) (2022).

(c) Arroyo argues that the cumulative effect of counsel's alleged errors prejudiced the outcome of his trial. When reviewing such a claim, we "evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors."

(Citation and punctuation omitted.) *Bulloch v. State*, 293 Ga. 179, 183 (2) (744 SE2d 763) (2013). But here, even assuming deficiency "with respect to only one alleged instance of ineffective assistance of trial counsel," we have concluded that Arroyo "was not prejudiced thereby, and we have identified no trial court error. There are accordingly no multiple errors from which to assess any cumulative harm." *Tyson v. State*, 312 Ga. 585, 602 (7) (864 SE2d 44) (2021).

*Judgment affirmed. Miller, P. J., and Markle, J., concur.*